M. J. MARSHALL *vs.* FRED E. WHEELER.

Oxford.   Opinion April 23, 1925.

*At common law a shed connecting the dwelling-house and barn and all other build-*
*ings used in connection with the dwelling was deemed a part of the owner's "castle"*
*and was protected from invasion against his will, except by the State in search of*
*violators of the law or by virtue of certain civil processes of which a writ of attachment*
*is not one, and the common law rule still remains in force in this State.*

The "castle" at common law was practically co-extensive with dwelling-house
and the dwelling-house embraced the entire aggregation of buildings used for
the abode.

In the instant case the fact that the title to the premises was in the plaintiff's wife,
or that he and his wife were away in the woods for several months prior to the
forcible invasion of the premises by the defendant, does not affect the plaintiff's
rights.   He clearly intended to return, having left his live stock there in charge
of a neighbor, and as the head of the household, the dwelling-house and the
buildings connected and used therewith, though belonging to his wife, was his
"castle" and immune from forcible invasion under the  circumstances of the
case.

On exceptions.   An action of trover to recover the value of an auto
truck which was stored in a barn on the home premises of the plaintiff,
the title to which premises was in plaintiff's wife.   The defendant,
a deputy sheriff, having been given a writ against the plaintiff and
requested to attach the auto truck, went to the premises where the
truck was stored, and finding the plaintiff and his wife away and the
buildings locked, went to a neighbor, who, while the plaintiff and his
wife were away for a few months, had the care of the premises and the
live stock of the plaintiff, and demanded admission to the barn where
the auto was stored for the purpose of attaching the auto under his
precept and on being refused went to the shed connecting the house
and barn and removed the lock thereon and entered the barn through
the shed and removed the truck.   At the trial of the case, there being
no dispute about the facts, for the purpose of raising the issue as to
whether the defendant had the right to remove the lock from the
shed door under his precept, the presiding Justice directed a verdict

for the defendant and exceptions to the ruling were taken by plaintiff. Exceptions sustained. Judgment for the plaintiff for the sum of $1,000.00.

The case fully appears in the opinion.

*Matthew McCarthy*, for plaintiff.

*Alton C. Wheeler*, for defendant.

SITTING: WILSON, C. J., PHILBROOK, MORRILL, STURGIS, BARNES, JJ.

WILSON, C. J. The defendant, a deputy sheriff, upon receiving a writ directed against the plaintiff in this action and to attach an auto truck which was stored in a barn belonging to the plaintiff's wife, went to the home of the plaintiff, who, with his wife, had for several months been in the woods engaged in a lumbering operation, and finding the door to the barn locked, went to the house of a neighbor, who, in the absence of the plaintiff, was taking care of his live stock and had the keys to a shed opening into the barn and demanded admission for the purpose of attaching the truck under his precept.

Upon being refused admission, the defendant returned to the home of the plaintiff and removed a lock from the door of the shed connecting the house and barn, and, through the shed, entered the barn and took and removed the truck, whereupon the plaintiff brought this action of trover to recover the value of the truck.

The issue at *nisi prius* was whether, under the conditions shown to exist, the officer in removing the lock from the shed door was protected by his process. The presiding Justice to raise the issue, it never having been judicially passed upon in this State, directed a verdict for the defendant. The case comes before this court on exceptions to this ruling.

The fact that the title to the premises was in the plaintiff's wife would make no difference. As the head of the household, occupying the dwelling-house, it was in law the castle of the plaintiff, from which he might repel all intruders, if necessary to protect his home and family.

Nor did his absence with his wife for several months in the woods make it any less his dwelling-house and castle. His household goods were still there and his live stock in the barn. Obviously he intended

to return as soon as his work in the woods was completed. Bish. Statutory Crimes, Sec. 279; Nutbrown's Case, 2 East P. C., 496; *Rex* v. *Westwood*, Russ. & Ry., 495.

The evidence discloses that the buildings consisted of a house, barn, and a connecting shed. From the shed one could enter either the barn or the house. The shed contained the usual toilet or closet found in country homes, and was also used as a convenient place for the storage of wood, the ordinary laundry articles, a refrigerator and other articles frequently used in the kitchen which it adjoined.

It is not in dispute that the ancient right at common law of immunity from interference with the privacy of one's home has come down to us. A man's dwelling-house is still his castle which may not be invaded against his will except by the State in search of violators of the law or upon certain processes of which a writ of attachment is not one. Bish. Crim. Law, Col. 1, Sec. 858; Bish. Crim. Pro., Vol. 1, Sec. 195; 1 Hale P. C., 458; *Kelley* v. *Schuyler*, 20 R. I., 432; *State ex rel McPherson* v. *Bechner*, 132 Ind., 371; *Bailey* v. *Wright*, 39 Mich., 96; *Palmer et al.* v. *King*, 41 App., D. C., 419; L. R. A., 1916 D. 278; *Ilsley* v. *Nichols*, 12 Pick., 270.

The first question to be determined, then, is: what buildings are included within the "castle"? It is urged by the defendant that the ancient conception of the castle, which included all the buildings used as a part of or in connection with the house in which the occupant slept or dwelt, and permitted the occupants to exclude all intruders from its outer walls, has been modified in keeping with changed conditions and modes of living. The reason for the dwelling-house being in fact a castle for the purposes of defense, it is true, no longer exists, but the principle of law ensuring privacy in one's home and giving to every man the right to repel intruders by force, if necessary, and which is usually expressed in the familiar maxim, "Every man's house is his castle," still remains in full force and vigor and is recognized in both our State and Federal Constitutions. Cons. of Maine, Art. I., Sec. 5. Art. IV. of the Amendments to the Federal Constitution. The reason for maintaining the privacy of the home is just as strong today as it was in the time of Chas. II., when it was held that a sheriff might not even enter a barn by force by virtue of a writ of *fieri facias*, if it was a part of the mansion house. *Pento* v. *Brown*, 1 Keble's Rep., 698.

At common law, the term "castle" appears to have been practically co-extensive with dwelling-house. It included not only the house or building in which the owner or tenant slept or lived in the ordinary sense of the term, but all that cluster of buildings connected or used with it.    4 Blackstone's Com., *224, *225.    Bish. Statutory Crimes, Sec. 278, 290.

As the last named authority puts it:    "One need not so constitute his habitation that all the rooms will be under one roof.    Therefore the word 'dwellinghouse' embraces the entire congregation of buildings, main and auxiliary used for abode.    'It includes,' says Hale, 'The privy, barn, stable, cowhouse and dairy houses, if they are part of the messuage, though they are not under the same roof or joining, or contiguous to it'."

Again, in his work on Criminal Law, Vol. II., Sec. 104, P. 2, the same author says:    "The term 'dwelling house' also includes the entire cluster of buildings not separated by a public way which are used for purposes connected with the habitation."

And in his Crim. Procedure, Vol. I., Sec. 194, he further says: "Any building other than that technically termed the castle or dwelling house, which consists of the cluster of buildings used for habitation and its collateral purposes  .  .  .  .  may even in civil cases be broken open to make an arrest."

The above definition of the term, castle or dwelling-house, is substantially adopted by the court in the following jurisdictions; *State* v. *McCall*, 4 Ala., 643; *State* v. *South*, 136 Mo., 673, 677, 38 S. W., 716; *Pitcher* v. *People*, 16 Mich., 142, 147; *Mitchell* v. *Com.*, 88 Ky., 349, 352, 11 S. W., 209.

This question of what is included within the term dwelling-house has more frequently arisen in the reported cases in connection with the crime of burglary and indictments for that offense.

However, such authorities are entitled to weight in determining what is included within that term when it comes to an invasion of the privacy of one's home by virtue of a civil process, since the crime of burglary is an invasion of the privacy of a man's habitation with an intent to steal; and at common law the crime consisted solely in the breaking and entering of the dwelling-house.    Bish. Crim. Law., Vol. II., Sec. 104.

In this connection, Mr. Bishop says, Statutory Crimes, Section 290,  "The habitation often termed the castle of the occupant,

which he may defend against the intruder to the taking of life and which only under limitation can be broken into to make an arrest is probably commensurate, or nearly so, with the dwelling house in burglary."

The law has thrown its protecting arm around the dwelling place of every man because it is the place of family repose. "It is, therefore, proper" said the court in *Mitchell* v. *Com.*, supra, "to secure not only the quiet and peace of the house in which they sleep, but also of any and all outbuildings which are properly appurtenant thereto and which as a whole contribute directly to their comfort and convenience of the place as a habitation."

From the authorities above cited, it appears clear that at common law a shed, connected with the house and used for the household purposes for which the shed in the case at bar was generally used, as disclosed by the evidence, would be considered a part of the dwelling-house, which an officer may not enter by force or against the will of the owner or tenant to serve a civil process like a writ of replevin.

No authority has been called to our attention indicating that in this State the common law has been modified in this respect, although in some jurisdictions it has been by statute. *Rentschler* v. *Fox*, 130 Mich., 498; *Howe* v. *Oyer*, 50 Hun., 559; 3 N. Y. S., 726; *State* v. *McPherson*, 132 Ind., 371. On the contrary, substantially the same definition of the term, dwelling-house, has been given legislative sanction in this State, at least, in cases of criminal invasion of the privacy of one's habitation, Sec. 8, Chap. 121, R. S.

If the rule at common law is too broad and instead of a shield and protection of the family repose and privacy, may become through the machinations of the unscrupulous a means of perpetrating fraud, the modifications must, as it has in other jurisdictions, come from the legislative branch of the government.

According to the stipulation of parties, the entries will be:

*Exceptions sustained.*
*Judgment for the plaintiff for*
*   sum of $1,000.00.*