**STATE of Maine**

v.

**Charles L. SMITH.**

Supreme Judicial Court of Maine.

Nov. 4, 1977.

David M. Cox, Dist. Atty., John A. Woodcock, Jr., Asst. Dist. Atty. (orally), Glen L. Porter, Intern, Bangor, for plaintiff.

Ford & Hall by Eugene W. Ford, Bangor (orally), for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

In July 1976 a Penobscot County grand jury indicted the defendant, Charles L. Smith (in testimony referred to informally as "Chuckie" Smith), for possession of a firearm by a felon in violation of 15 M.R. S.A. § 393.[1]  The defendant moved in ad-

---

1. The defendant had been previously convicted of the crime of robbery and sentenced to Maine State Prison, from which he was released on February 7, 1975, *i. e.,* less than five years prior to the date of the present offense. The defendant thus fell within that class of persons whose possession of a firearm was made a crime by 15 M.R.S.A. § 393:

"It shall be unlawful for any person who has been convicted of a felony under the laws of the United States or of the State of Maine, or of any other state, to have in his possession any pistol, revolver, or any other firearm capable of being concealed upon the person until the expiration of 5 years from the date of his discharge or release from prison or termination of probation."

vance of trial to suppress the use of a revolver, holster, and belt as evidence against him. After hearing, the presiding justice denied the motion, and the case proceeded to trial before a jury. The defendant appeals from the judgment entered upon the jury's verdict of guilty, alleging as error the refusal of the presiding justice to grant the suppression motion and the alleged insufficiency of the evidence to sustain the verdict.

We deny the appeal.

At approximately 1:30 a. m. on July 4, 1976, Officer Frank Crowley of the Bangor Police Department was informed by the police dispatcher that one Chuckie Smith had been reported to be at Grant's Trailer Park "walking around with a gun strapped on him." Officer Crowley knew a Chuckie Smith, who was also known to him to have a felony record. Office Crowley, then in plainclothes, immediately drove his unmarked cruiser to Grant's Trailer Park to investigate the report. At the park entrance, the officer encountered a resident of the park, who identified himself as Tom Patterson and who, on inquiry, said that he knew a Chuckie Smith. Patterson suggested the officer would find Smith at the trailer on Lot 73 and stated that Smith was "strung out" and had "a gun strapped on him." Proceeding immediately to Lot 73, the officer spied two individuals at the trailer door. One he instantly recognized as the Chuckie Smith whom he knew. Smith, the defendant, was wearing a belt and a holster that contained what "appeared to be a western-type revolver," although the revolver itself was apparently obscured by the holster. At that moment, Officer Crowley was joined by Officer Nye, who arrived in a marked cruiser. Both officers approached the door but were refused entry by an unknown man who denied that Smith was present. Officer Crowley went around to the back of the trailer and through the bedroom window saw Chuckie Smith again, but could not see his waist and below.

Shortly thereafter, Officer Nye informed Officer Crowley that the owner of the trailer had given his permission to their entry. Upon entering, the officers went immediately to the rear of the trailer where Officer Nye ordered the defendant out of the bedroom. As the defendant moved into the hallway, Officer Crowley stepped behind him into the bedroom and spotted a gun belt and holster, containing a revolver, resting on the floor in open view, only some five feet from the hallway door. Observing that the ensemble resembled that which he had seen Smith wearing only minutes before in the trailer doorway, Officer Crowley seized the revolver, a Ruger .44 magnum, along with the gun belt and holster. After noting that the gun was loaded, the officers immediately placed the defendant under arrest for possession of a firearm by a felon.

I

■ The appellant asserts error in the presiding justice's denial of his pre-trial motion to suppress. This court will reverse that ruling only if it is clearly erroneous. *State v. McLain,* Me., 367 A.2d 213 (1976); *State v. Walker,* Me., 341 A.2d 700 (1975). On the defendant's appeal, the State advances three familiar rationales to justify this warrantless search in the face of constitutional attack: (1) search based upon probable cause and exigent circumstances; (2) search incident to arrest; and (3) search based upon a valid consent. It is unnecessary to reach the latter grounds, since we find the first asserted justification sufficient.

■ Probable cause to search exists when the officers' personal knowledge of facts and circumstances, in combination with any reasonably trustworthy information conveyed to the police, would warrant a prudent person believing that the search would disclose criminal conduct or items that would aid in identifying a criminal or establishing the commission of a crime. *State v. Walker, supra; State v. Heald,* Me., 314 A.2d 820 (1973). Similarly, officers possess probable cause to arrest "where the facts and circumstances within the knowl-

edge of the officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent and cautious man in believing that the arrested person had committed or was committing a felonious offense." *State v. Smith,* Me., 277 A.2d 481, 488 (1971). *Accord, e. g., State v. LeBlanc,* Me., 347 A.2d 590 (1975).

■ A review of the evidence produced by the State at the suppression hearing clearly shows that Officers Crowley and Nye possessed probable cause to arrest the defendant, Chuckie Smith, prior to the time they entered the trailer at Lot 73. Officer Crowley knew of the appellant and his previous felony conviction. Going to Grant's Trailer Park in response to the police dispatch (itself triggered by information received from a source not identified at the suppression hearing), Officer Crowley encountered Patterson, who told him he had observed Chuckie Smith a short time earlier "strung out" at Lot 73 and wearing a gun. Although other information then within the officer's possession did not decisively establish reliability and credibility of the source of his knowledge of the probable crime, information given police by a citizen who is an eyewitness or a victim carries certain inherent indicia of trustworthiness, and may be considered as part of the evidentiary chain establishing probable cause. As the Second Circuit has said:

> "In this case, [the informer] was not an anonymous paid informer, but an identified bystander with no apparent motive to falsify. The report of such a person has a 'peculiar likelihood of accuracy' . . . ." *United States v. Rollins,* 522 F.2d 160, 164 (2d Cir. 1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976).

*Accord, United States v. Mahler,* 442 F.2d 1172, 1174–75 (9th Cir. 1971), *cert. denied,* 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971) (victim). Without specific comment, this court in the recent past has in fact applied the rule expressly stated by those circuits. Probable cause has been found on the basis of information furnished by a victim or eyewitness, without independent verification of its trustworthiness. *State v. Babcock,* Me., 361 A.2d 911 (1976) (victim); *State v. LeBlanc, supra* at 594 (eyewitness); *State v. York,* Me., 324 A.2d 758 (1975) (eyewitness). Armed with the foregoing information, Officer Crowley drove directly to Lot 73. As he drove up, he saw the appellant, Chuckie Smith, standing in the doorway wearing a belt and holster which appeared to contain a gun. At that moment, if not well before, the totality of the facts and circumstances within the officer's knowledge ripened without the slightest doubt into probable cause to arrest the appellant without a warrant for the offense of possession of a firearm by a felon.

The same factors that established probable cause to arrest also created an atmosphere of exigency which justified the officers' warrantless intrusion into the trailer in search of the appellant. Probable cause existed to believe that the appellant, a known felon, possessed a dangerous weapon. The officers were also told that he was "strung out," from which they could reasonably conclude he was in an especially dangerous condition. After the officers arrived, Smith retreated into the trailer where Officer Crowley again saw him through the rear bedroom window. The officers knew that other persons were present in the trailer and possibly imperiled by the presence of an armed felon who was attempting to evade the police. Under all these circumstances, it was sound police practice to make an immediate warrantless entry and search. *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *State v. Cress,* Me., 344 A.2d 57 (1975); *State v. Walker, supra; State v. Stone,* Me., 294 A.2d 683 (1972), *application for bail denied,* 409 U.S. 908, 93 S.Ct. 212, 34 L.Ed.2d 169 (1972).

■ The situation of exigency which justified the initial entry and search for the appellant also legitimated the subsequent seizure of the firearm itself. At the time of the seizure Chuckie Smith had, only moments before, left the bedroom, and the officers had reason to anticipate the presence of a firearm, either on his person or

within the limited confines of the trailer hall or bedroom. Officer Crowley was acting reasonably under all the circumstances and in light of what he had been told and had observed when he stepped into the bedroom to look for the weapon.

"The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be used against them or to effect an escape." *Warden v. Hayden, supra,* 387 U.S. at 298–99, 87 S.Ct. at 1646, 18 L.Ed.2d at 787.

Because possession of the weapon by Smith constituted the crime, the police were entitled to seize the revolver for subsequent use in evidence against him. *State v. Stone, supra.*

No constitutional infirmity having tainted the search, seizure, or arrest in this case, the presiding justice correctly denied the appellant's motion to suppress.

## II

Having preserved the issue for appellate review by making appropriate motions at trial [Rule 29(a), M.R.Crim.P.], the appellant contends (1) that to constitute a "firearm" within the proscription of 15 M.R.S.A. § 393, the revolver found in his possession must have been operable at the time of seizure and (2) that the State failed to prove beyond reasonable doubt that the revolver was operable. We agree with the appellant's first contention; the statute does make the carrying of the revolver by the felon Smith a crime only if the revolver was capable of "expel[ling] a projectile by the action of an explosive" or could "be readily made into a firearm by insertion of *a firing pin.*" We disagree, however, with the contention that there was any fatal shortfall in the State's proof of this element of the crime for which he was convicted.

The defendant was convicted of a crime defined by a statute outside the Maine Criminal Code, 15 M.R.S.A. § 393. That section itself proscribes the possession of a "firearm capable of being concealed upon the person"; and a closely preceding section, 15 M.R.S.A. § 391, also defines "firearm" in terms of limited size and concealability:

" 'Pistol,' 'revolver' and 'firearm' mean a weapon capable of being concealed upon the person and shall include all firearms having a barrel of less than 12 inches in length."

Thus defined, as it was in the original enactment of 15 M.R.S.A. §§ 391 and 393 (P.L.1955, ch. 310), the "firearm" element in the crime would apparently be satisfied even if the weapon in fact was inoperable. The legislature could, with understandable reason, proscribe the carrying of any apparent weapon by a convicted felon, to which there might be violent reaction, even though the weapon was in fact inoperable. *State v. Middleton,* 143 N.J.Super. 18, 362 A.2d 602, 604 (1976). Such, however, was not the status of the applicable Maine statutes on July 4, 1976, when Chuckie Smith committed the alleged offense. Effective on May 1, 1976, the legislature had enacted the Maine Criminal Code, which carried its own definition of "firearm" in 17–A M.R.S.A. § 2(12–A):

" 'Firearm' means any weapon, whether loaded or unloaded, *which will expel a projectile by the action of an explosive* and includes any such weapon commonly referred to as a pistol, revolver, rifle, gun, machine gun or shotgun. *Any weapon which can be readily made into a firearm* by the insertion of a firing pin, or other similar thing in the actual possession of the actor or an accomplice, is a firearm." (Emphasis added)

One might normally assume that the legislature would not intend to impose the operability criterion of a "firearm" upon a criminal statute which had existed long before the effective date of the Maine Criminal Code and which was left unrepealed at the enactment of the code. The code itself speaks, however, directly to this point. Sec-

tion 6(1) of the code specifically declares that the provisions of certain chapters, which encompass 17–A M.R.S.A. § 2(12–A) defining "firearm" as quoted above, "are applicable to crimes defined outside this code [such as 15 M.R.S.A. § 393] unless the context of the statute defining the crime clearly requires otherwise."

■ There is nothing in the context of section 393 that clearly requires that the code's operability criterion of a "firearm" not be applicable to the crime of possession of a firearm by a felon. The definitional provisions of 15 M.R.S.A. § 391, as well as of 15 M.R.S.A. § 393 itself, address merely the requirements of size and concealability and reflect the legislature's appreciation of the special danger inherent in firearms capable of concealment on the person. The requirement of operability, first expressly imposed by the code, reflects a different, but not inconsistent, purpose; namely, to proscribe the possession of only firearms actually capable of producing the feared harm. Because each definition covers an independent aspect of the proscribed firearm, the context of § 393 does not require that the code definition be inapplicable. By the clear mandate of 17–A M.R.S.A. § 6, the definitions are therefore applicable cumulatively, and the State must prove both concealability and operability of the weapon in order to establish a violation of 15 M.R.S.A. § 393. We thus concur both with the appellant's argument on appeal and with the decision of the presiding justice below, who instructed the jury that in order to return a verdict of guilty on the possession offense, the State must prove beyond a reasonable doubt that the firearm fulfilled the requirements of both concealability and operability.[2]

■ The appellant further argues that the evidence was insufficient to sustain a finding that the revolver was operable at the time of the seizure. With this assertion we cannot agree. The revolver itself, ap-

parently in good condition and showing no sign of disrepair or decrepitude, was an exhibit admitted in evidence before the jury. In addition, Officer Crowley had testified at the suppression hearing that the revolver had a firing pin, both when seized and at the time of hearing; there is nothing in the record to suggest that the revolver at the time it was before the jury did not still have a firing pin. The jury had the revolver in the jury room during its deliberations. The members of the jury were capable of independently examining the revolver's condition and could weigh the significance of their personal observations in light of the fact that neither party had produced any evidence remotely suggesting that it was in fact inoperable. Confronted with no contrary indication, the jury, in its proper role as factfinder and properly instructed as to the applicable law (exactly as we now on appeal hold it to be), could conclude from the condition of the revolver that it satisfied beyond a reasonable doubt the requirement of operability mandated by the Criminal Code. *Commonwealth v. Layton,* 452 Pa. 495, 307 A.2d 843 (1973); *State v. Morgan,* 121 N.J.Super. 217, 296 A.2d 539 (1972).

We find the evidence sufficient to sustain the jury verdict, and in consequence the entry must be:

Appeal denied.

Judgment affirmed.

All Justices concur.

---

2. By P.L.1977, ch. 225, § 2 (effective October 24, 1977), the legislature repealed 15 M.R.S.A. § 393, enacting a new provision in its stead. Section 393 now expressly provides that the code definition of "firearm" qualifies the of-

fense of possession of a firearm by a felon. The newly substituted § 393 merely clarifies, in this respect, the applicability of the code definition to that section.