STATE of Maine

v.

David W. GRIFFIN.

Supreme Judicial Court of Maine.

Argued Sept. 13, 1984.
Decided Oct. 17, 1984.

Michael Povich, Dist. Atty., Edward McSweeney, III, Asst. Dist. Atty. (orally), Ellsworth, for the State.

Stern & Goldsmith, J. Hilary Billings (orally), Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

On June 9, 1982, the Hancock County Grand Jury indicted David W. Griffin, the defendant, on a count of assault with a dangerous weapon, 17–A M.R.S.A. § 208(1)(B) (1983), and on a count of criminal threatening with the use of a dangerous weapon, 17–A M.R.S.A. § 209 (1983). At trial in the Superior Court, the jury found the defendant guilty of the lesser included offense of simple assault on the first count and guilty of criminal threatening with the use of a dangerous weapon. On appeal the defendant contends that omissions from the presiding justice's instructions to the jury constitute obvious reversible error, that the jury's verdict is internally inconsistent and contrary to state law, and that the presiding justice improperly restricted the scope of cross-examination. We conclude that the presiding justice failed to instruct the jury on an essential element of the crime of criminal threatening with the use of a dangerous weapon. We affirm the defendant's conviction for simple assault and vacate the defendant's conviction for criminal threatening with the use of a dangerous weapon.

Essentially two versions of the facts were presented at trial; no one disputes, however, that on May 23, 1982, the defendant and his friend, Herbert Wentworth, arrived at the house of the defendant's estranged wife, Joanne Griffin, in Southwest Harbor, Maine. The State contends that the defendant burst into Joanne Griffin's house uninvited and without her consent, and dragged his wife from the kitchen to the hall where he asked Mr. Wentworth to get him a knife. Joanne Griffin escaped her husband's grasp and ran across the street to the Dunbars' house where the defendant grabbed her and held a knife to the back of her neck. Although Joanne Griffin heard the defendant ask for a knife and she felt what she thought was a knife on her neck, she never actually saw the defendant holding a knife. Jane Dunbar, however, saw the defendant hold his wife by the hair with his left hand while he was holding a butcher knife in his right hand. Randy Dunbar, alerted to the incident by his mother Jane Dunbar, never saw the defendant holding a knife, but shortly after the defendant and Joanne Griffin were separated, Randy Dunbar found a butcher knife under a tree about two feet from where the defendant had been holding his wife. Although the defendant admits to chasing his wife to the Dunbars' and grabbing hold of her, he denies threatening her with a knife. He asserts that Joanne Griffin attacked him with a butcher knife which he wrested from her and immediately "tossed" to Mr. Wentworth who in turn "tossed" it out the door.

After the jury returned its verdicts, defendant moved pursuant to M.R.Crim.P. 29(b) for judgment of acquittal on the criminal threatening count on the ground of inconsistent verdicts. The presiding justice denied the motion and sentenced the defendant to terms of one year on the assault conviction[1] and eighteen months on the criminal threatening with the use of a dangerous weapon conviction, the sentences to

---

1. The sentence imposed exceeds by one day the *maximum* allowable sentence for a Class D offense. *See* 17–A M.R.S.A. § 1252(2)(D) (1983).

be served concurrently. The defendant immediately filed a notice of appeal to the Law Court.

## I. Omissions from Jury Instructions

On this appeal, the defendant assigns as error, despite no objection at the time, the presiding justice's failure to define the terms "use of a dangerous weapon", an essential element of the crime of criminal threatening with the use of a dangerous weapon, and "bodily injury", an essential element of the crime of simple assault. No party shall assign as error any omission from jury instructions unless he objects before the jury retires. M.R.Crim.P. 30(b). An exception to the general rule is M.R. Crim.P. 52(b), which permits the Law Court to notice obvious errors affecting substantial rights even though no objection was made at trial.

■ In review, the Law Court will not scrutinize instructions for isolated shortcomings, instead we consider the effect of all the instructions in context, particularly in an obvious error situation. *State v. Daley*, 440 A.2d 1053, 1056 (Me.1982). The presiding justice's failure to define the phrase "use of a dangerous weapon" prejudicially affects substantial rights of the defendant. "Use of a dangerous weapon" means:

> the use of a firearm or other weapon, device, instrument or substance, whether animate or inanimate, which, in the manner it is used or threatened to be used is capable of producing death or serious bodily injury.

17–A M.R.S.A. § 2(9)(A) (1983). "Serious bodily injury" referred to in the definition of "use of a dangerous weapon", and undefined by the presiding justice's instructions, means:

> a bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or loss or substantial impairment of the function of any bodily member or organ, or extended

convalescence necessary for recovery of physical health.

17–A M.R.S.A. § 2(23) (1983).

Although the jury had the opportunity to view the butcher knife and hear testimony about its use, the jury could not determine by means of common sense the meaning of the phrases "use of a dangerous weapon" and "serious bodily injury", indeed the jury may never have heard the phrase "serious bodily injury" during the trial. In fact, the presiding justice instructed the jury that on neither charge were they to be concerned with the quantum of bodily injury. The jury may have incorrectly thought that by merely holding a knife in his hand the defendant used a dangerous weapon when the definition requires a use or threatened use which is capable of producing death or serious bodily injury. Because we vacate the defendant's conviction of criminal threatening with the use of a dangerous weapon, we do not reach the issue whether the Superior Court's failure to instruct on the lesser included offense of simple criminal threatening was reversible error.

■ Unlike the failure to define "use of a dangerous weapon" and "serious bodily injury", the failure to define "bodily injury", as used in 17–A M.R.S.A. § 207(1) simple assault, did not prejudicially affect substantial rights of the defendant. Neither 17–A M.R.S.A. § 2(5) (1983) defining bodily injury, nor § 207(1) itself, requires any particular level or quantum of pain, illness, or impairment. If anything, the common sense understanding of the phrase "bodily injury" is more restrictive than its statutory meaning.

## II. Inconsistency in the Jury's Verdict

The defendant's motion for acquittal contended that because the jury did not follow the presiding justice's instructions on the possible verdicts it could properly return, the defendant's criminal threatening with the use of a dangerous weapon conviction must be vacated. Although we vacate that conviction on other grounds, we discuss the issue for the benefit of the court on re-

mand. The jury was instructed that it could find the defendant not guilty of both Count I, aggravated assault, and Count II, criminal threatening with the use of a dangerous weapon, or the jury could find the defendant guilty of either count but not the other. According to the presiding justice, the jury could not find the defendant guilty on both counts. In addition, the jury was instructed that it could find the defendant guilty of the lesser included offense of simple assault rather than aggravated assault if the jury believed the defendant caused bodily injury without the use of a dangerous weapon.

■ Putting aside whether the jury misapplied the instructions when it found the defendant guilty of both the lesser included offense and Count II rather than guilty of both Counts I and II, the defendant cannot complain of rulings more favorable than he has a right to expect. *See State v. Gagnon*, 383 A.2d 25, 31 (Me. 1978). Although the jury might have misapplied the presiding justice's interpretation of the law, no harm was done to the defendant because the instructions incorrectly stated the law to the defendant's advantage. The jury could have found that the defendant committed the simple assault when he pulled his wife's hair and grabbed her. Had the jury been properly instructed on the meaning of "use of a dangerous weapon" and "serious bodily injury" and the evidence supported it, the jury also could have found that the defendant violated the criminal threatening statute if he threatened his wife with a butcher knife although he may not have used the knife to inflict any bodily injury. A person's continuous conduct need not constitute a single unitary act; or even if continuous conduct is one indivisible act, the same act may violate more than one statute as long as none of the violations are a lesser included offense of the other. *See State v. Thurlow*, 387 A.2d 22, 24 (Me.1978); *Newell v. State*, 371 A.2d 118, 119 (Me.1977); *State v. Gagne*, 362 A.2d 166, 172 (Me.1976).

## III. Scope of Cross-Examination

The defense proposed to cross-examine Joanne Griffin about her commitment for psychiatric treatment, her treatment for alcoholism, her possible use of prescribed medicine, and her criminal record. The presiding justice did not permit the defense to inquire into these areas. Although recognizing that the scope of impeachment testimony is within judicial discretion, the defense claims the trial justice improperly restricted the scope of cross-examination and thus committed reversible error. *See State v. Warren*, 312 A.2d 535, 544 (Me. 1973).

■ Although the record is unclear, apparently the defendant proposed to introduce copies of summary sheets recording Joanne Griffin's discharge from hospitals for psychiatric treatment and treatment for alcoholism. In addition, the defense proposed to question Joanne Griffin on her possible use of prescribed drugs based on information contained in one of the summary sheets. Because the defendant failed to show that the summary sheets would be a foundation for expert testimony on the effects of the witness's psychiatric and alcoholism treatment, the presiding justice did not abuse his discretion in excluding evidence of Joanne Griffin's treatment. *See State v. Flaherty*, 394 A.2d 1176, 1178 (Me. 1978); M.R.Evid. 403 and 611(a).

■ Finally, the defendant unsuccessfully sought to impeach Joanne Griffin's credibility with evidence of a prior larceny conviction. The Maine Rules of Evidence, Rule 609, provide that evidence of a conviction for a crime involving dishonesty is admissible for impeachment purposes if less than 15 years have passed since the conviction or less than 10 years have passed since the end of any incarceration therefor, whichever is the later date. Joanne Griffin was convicted of shoplifting 14 years, 9 months before the defendant's February, 1984 trial. She was not incarcerated. The Law Court has interpreted Rule 609 as favoring the admission of all convictions of prosecution witnesses that fall

within the terms of the rule. *See State v. Trafton,* 425 A.2d 1320, 1324 (Me.1981). We conclude beyond a reasonable doubt, however, without deciding whether Joanne Griffin's 14 years, 9 months old shoplifting conviction without incarceration is within the terms of the Rule, that the probative value of evidence of the conviction is so slight that any error that resulted was harmless error not requiring reversal of the defendant's simple assault conviction. *See State v. Hassapelis,* 404 A.2d 232, 237 (Me.1978).

The entry is:

Judgment of conviction for assault affirmed, remanded for correction of sentence.

Judgment of conviction for criminal threatening with the use of a dangerous weapon vacated, remanded for further proceedings consistent with the opinion herein.

All concurring.