**STATE of Maine**

v.

**Donald BOILARD.**

Supreme Judicial Court of Maine.

Argued Sept. 7, 1984.

Decided March 15, 1985.

Michael Saucier, David D. Gregory (orally), Asst. Dist. Attys., Alfred, for plaintiff.

Ahlgren & Perrault, John Perrault (orally), Portsmouth, for defendant.

Before McKUSICK, C.J., ROBERTS, VIOLETTE, GLASSMAN and SCOLNIK, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

Donald Boilard appeals from his convictions in the Superior Court (York County) on the charges of assault, 17–A M.R.S.A. § 207 (1983), and of obstructing government administration, 17–A M.R.S.A. § 751 (1983), both Class D crimes. On appeal, Boilard challenges the denial of his motion in the District Court (Kittery) to dismiss the charges against him, or to suppress evidence of the two crimes, because of the allegedly illegal police entry into his home which accounted for his confrontation with these public servants and led police to his arrest. We reverse the finding of the suppression judge to the effect that the police lawfully entered Boilard's home. This ruling, however, does not entitle the defendant to have the evidence of the stated charges suppressed, nor to have the complaints dismissed. The majority of the court affirms the judgments of conviction.

In the early evening of August 20, 1983, the South Berwick Police Department received a call on the telephone from an individual who reported disturbing shouting from the Boilard home between Donald Boilard and one of his children. The caller did not immediately identify himself, but when pressed admitted that he was William Straub, a neighbor of Mr. Boilard. At trial, Mr. Straub testified that he did not see Boilard, nor his children, on August 20th, but was concerned because of the loudness of the argument.

The police dispatcher radioed Officer Peter Gagnon, who was on cruiser patrol at the time, and informed him of a domestic disturbance at the Boilard residence on Old South Road. Asking for details, Gagnon was told that it sounded as if Boilard was beating his kids. Within minutes, the officer was there, arriving shortly after 6:30 p.m. As he was walking toward the front door of the house, Gagnon admitted that all was quiet. The officer already knew Mr. Boilard, having had several contacts with him in the past. Whether he had time to knock on the door, the officer was not sure, but he testified that the front door was thrown open by Boilard, who told him very excitedly "to get——off his property." The officer then advised Boilard that the police had received a complaint that he was beating his kids and that he, Gagnon, was there to check on it and all he wanted to do was to see the children and if they were fine, he would leave. Boilard did not see it that way. He told the officer again to get off his property, that it was his house and that he did not have to show him the kids if he did not want to. The defendant then tried to close the door on the officer, but the agile policeman had already placed his foot in the doorway to prevent its closing shut and with the necessary "beef" forced his way into the front entryway to the Boilard home.

The officer's presence in the house got the children to start yelling, screaming and crying. Gagnon was urging the defendant to let him see the children as the police had

received this complaint that he was beating his kids. Boilard would not hear of it and kept telling the officer that he was trespassing and to get off his property and that, if he did not, it would cost the officer his job. He did manage to tell the officer that all he did was that he had spanked his kids. Officer Gagnon then attempted to move from the hallway of the house into the living room where Boilard's two sons of school age and some guests were sitting. The defendant tried to prevent this by pushing the officer out of the house, but in this he did not succeed, and the officer threatened Boilard with arrest, if he resisted further. By this time, Boilard had ordered his children to go upstairs. Adamant in seeing, and talking with, the two sons, asserting this a police routine practice in domestic cases in South Berwick, Officer Gagnon pushed his way to the living room, where after some scuffle Boilard was placed under arrest with the help of backup police for assault and obstruction of government administration. After Boilard was properly secured in the police cruiser, Officer Gagnon returned to the house and had the children come down. They told the officer that their father had spanked them for being bad boys. The spanking had left no bruises, so far as the officer could see.

### 1. Warrantless Entry

The defendant's motion before the judge of the District Court sought dismissal of both charges against him or, in the alternative, suppression of all evidence of the happenings inside the house because of Officer Gagnon's alleged illegal entry into his home. The District Court judge denied the motion, ruling that the police entry was not illegal and that, even if it were, evidence of crimes committed after an illegal entry would not be suppressable as such. We agree with this ruling insofar as it denied the motion to suppress, but disagree with the judge's conclusion that the policeman's forceful entry into the Boilard residence was legal.

Both the constitutions of Maine and of the United States prohibit unreasonable searches and seizures in the homes of our people. This treasured freedom is protected by the warrant requirements of section 5 of article I of the Maine Constitution and of the fourth amendment to the United States Constitution.[1] Warrantless searches are *per se* unreasonable, subject to a few specifically established, carefully drawn and much guarded exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *State v. Johnson*, 413 A.2d 931, 933 (Me. 1980). Warrantless entries into private homes for purposes of search, or arrest for that matter, are equally unreasonable, except in those circumstances wherein an exception to the warrant requirements has been carefully drawn and guarded as previously stated. *See Payton v. New York*, 445 U.S. 573, 576, 100 S.Ct. 1371, 1374–75, 63 L.Ed.2d 639 (1980), where the United States Supreme Court held that "the Fourth Amendment ... prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." As stated in *State v. Smith*, 379 A.2d 722, 725–26 (Me.1977), it was sound police practice presenting no constitutional infirmity for the police to make an immediate warrantless *entry and search* in a situation of exigency as existed in that case. The principle of law ensuring privacy in one's home and giving to every man the right *to repel*

---

1. Art. I, § 5. *Unreasonable searches prohibited*

 The people shall be secure in their persons, houses, papers and possessions from all unreasonable searches and seizures; and no warrant to search any place, or seize any person or thing, shall issue without a special designation of the place to be searched, and the person or thing to be seized, nor without probable cause— supported by oath or affirmation.

U.S. Const.Amend. IV.

*Searches and seizures*

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

intruders *by force,* if necessary, and which is usually expressed in the familiar maxim, "Every man's house is his castle," still remains in full force and vigor and is recognized in both our State and Federal Constitutions. What was true in 1925, as this Court then pronounced, is still true in this age. *See Marshall v. Wheeler,* 124 Me. 324, 326, 128 A. 692, 693 (1925).

■ Recognized exceptions to the warrant requirements of the constitutions exist in situations where the entry and subsequent search by law enforcement officers are incidental to hot pursuit of a fleeing felon. *See Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Also, our Court has expressly noted that a search conducted by police pursuant to a valid consent, upon unopposed entry into the home, is constitutionally permissible and is an established exception to the warrant requirement of the federal constitution. *State v. Koucoules,* 343 A.2d 860, 866 (Me.1974) citing *Vale v. Louisiana,* 399 U.S. 30, 35, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970). In a similar situation, we said in *State v. McLain,* 367 A.2d 213, 216 (Me. 1976) that the entry into a person's home without a warrant was unreasonable in itself unless justified under one of a few exceptions to the requirement of a warrant issued by a disinterested magistrate on a showing of probable cause; an established exception to the warrant requirement is a search conducted pursuant to a valid consent.

■ Our Court has recognized an additional exception to the warrant requirements in situations where exigent circumstances exist. *See State v. Dunlap,* 395 A.2d 821, 824 (Me.1978). But, before reaching the issue of the existence *vel non* of exigent circumstances underlying the dispensation with the warrant requirement in police intrusions upon private property, such as in this case the undertaking by a law enforcement officer of forceful entry into a private dwelling-house, the officer must have knowledge of facts supporting a proper determination of probable cause.

Indeed, it is the coexistence of probable cause and exigent circumstances that will justify the warrantless entry of a home and a subsequent search or arrest therein. *See State v. Barclay,* 398 A.2d 794, 796–97 (Me.1979); *State v. Libby,* 453 A.2d 481, 484 (Me.1982). The issue of whether exigent circumstances exist excusing the procurement of a search warrant becomes relevant only if there has been a threshold finding that there was probable cause for the entry and search. *State v. Sweatt,* 427 A.2d 940, 950 (Me.1981). Hence, in the instant case, the burden is on the State to prove by a preponderance of the evidence that Officer Gagnon's forceful entry into the Boilard home in search of the children for investigative purposes was made with probable cause that a crime had been committed *and* that the circumstances were such that it was impracticable for the officer to postpone his entry and search until he obtained a warrant to do so. The burden is on the State to prove the underlying facts bringing the case within one of the exceptions to the warrant requirement. *State v. Philbrick,* 436 A.2d 844, 854 (Me. 1981); *State v. Dunlap,* 395 A.2d 821, 824 (Me.1978); *State v. Heald,* 314 A.2d 820, 829 (Me.1973).

■ The defendant's challenge of the District Court's ruling that the police entry into the Boilard home was legal does not constitute an attack on the judge's findings of fact, since the facts surrounding the entry are undisputed in any material aspect thereof, but it only brings up for review Boilard's claim that the judge's legal conclusions are in error for being based on misinterpretation of the applicable law. Under such circumstances, the clearly erroneous standard is inapplicable. *See State v. Johnson,* 413 A.2d 931, 933 (Me.1980).

### 2. Illegal Entry

■ We note initially that our Criminal Code does not expressly justify the use of a reasonable degree of nondeadly force upon another person by a law enforcement officer in criminal investigations as such, let

alone to effect the entry of a person's home for the purpose of investigating criminal complaints. Such omission is meaningful, considering the sanctity of the home which the constitutions of both the State and the Nation expressly protect against unreasonable intrusions from governmental authorities. The Code, however, did fashion a rule of conduct providing justification by law enforcement officers in the use of force in making arrests, changing the common law concepts in that regard.[2] *See State v. Austin,* 381 A.2d 652 (Me.1978).

On the other hand, the Code spells out the right of a person to use force against unwanted intrusions upon one's property, without differentiating between warrantless police personnel and other ordinary citizens.[3] It is not unreasonable for police officers in the pursuit of criminal investigations to seek information, as Officer Gagnon did in this case at the Boilard residence respecting the complaint which the police had received about the disturbing noise reportedly caused by Mr. Boilard and his sons. But this right to call at the home does not include the right to walk in against the wishes of the person in possession or in control of the premises. *See State v. Crider,* 341 A.2d 1, 4 (Me.1975). That the officer in this case was acting in complete good faith in the performance of necessary investigative duties in a manner recommended by official policy of his department does not make legal his forceful entry into the Boilard private dwelling against Boilard's express prohibition to do so. Warrantless official intrusions, without consent, upon the citizen's private property or reasonable expectancies of privacy, in the absence of probable cause and exigent circumstances, are constitutionally unauthorized and unjustified and constitute a trespass. *See State v. Crider, supra* at 5; *see also State v. Richards,* 296 A.2d 129, 137 (Me.1972).

We hold that Officer Gagnon's forceful entry into the Boilard home against Mr. Boilard's consent constituted a trespass and was not legal as the judge of the District Court determined.

### 3. Probable cause

■ As we have stated, if the officer in this case had had information that would have led a reasonable and cautious person to believe that a search of the Boilard home to see the children and observe their condition would probably disclose criminal conduct on the part of the defendant, the

---

**2.** 17–A M.R.S.A. § 107, in pertinent parts, provides:

 1. A law enforcement officer is justified in using a reasonable degree of nondeadly force upon another person:

 A. When and to the extent that he reasonably believes it necessary to effect an arrest or to prevent the escape from custody of an arrested person, unless he knows that the arrest or detention is illegal; or

 B. To defend himself or a 3rd person from what he reasonably believes to be the imminent use of nondeadly force encountered while attempting to effect such an arrest or while seeking to prevent such an escape.

 7. Use of force that is not justifiable under this section in effecting an arrest does not render illegal an arrest that is otherwise legal and the use of such unjustifiable force does not render inadmissible anything seized incident to a legal arrest.

 8. Nothing in this section constitutes justification for conduct by a law enforcement officer or a private person amounting to an offense against innocent persons whom he is not seeking to arrest or retain in custody.

**3.** 17–A M.R.S.A. § 104, in relevant parts, provides:

 1. A person in possession or control of premises or a person who is licensed or privileged to be thereon is justified in using nondeadly force upon another when and to the extent that he reasonably believes it necessary to prevent or terminate the commission of a criminal trespass by such other in or upon such premises.

17–A M.R.S.A. § 402. *Criminal trespass*

 1. A person is guilty of criminal trespass if, knowing that he is not licensed or privileged to do so:

 A. He enters any dwelling place;

 D. He remains in any place in defiance of a lawful order to leave, which was personally communicated to him by the owner or other authorized person; or

 E. He enters any place in defiance of a lawful order not to enter, which was personally communicated to him by the owner or other authorized person.

officer's warrantless forceful entry might be legal, if the entry was made under exigent circumstances. *State v. Smith*, 379 A.2d 722, 724 (Me.1977); *State v. Walker*, 341 A.2d 700, 703 (Me.1975).

From this record, we hold that Officer Gagnon, as a matter of law, did not have probable cause justifying a reasonable and cautious person to believe that Boilard was guilty of criminal conduct in respect to his children or that a warrantless entry into the Boilard residence over Mr. Boilard's objections to search for the children would disclose criminality. In this regard, we apply the rule that, if the investigating officer is acting on information conveyed by police transmission facilities, which by itself would not be sufficient to establish probable cause to justify a search, then the forceful entry by the police into a private dwelling would be illegal, unless the State produced evidence within the knowledge of other members of the police on which the radio information was based and which itself singly or in conjunction with the evidence independently gathered by the intruding officer constituted probable cause. *See State v. Parkinson*, 389 A.2d 1, 8–9 (Me.1978). In the instant case, Officer Gagnon conceded that, when he approached the Boilard residence, there was no loud shouting as reported and the area was quiet. Here, the State, which had the burden of proof in establishing that the officer's entry into the Boilard residence was made in a situation wherein an exception to the warrant requirement was recognized (and this would include proof of the existence of probable cause *and* exigent circumstances), did not produce the police dispatcher, either at the suppression hearing or at trial, so that the testimony of the informant concerning what was reported is undisputed.

William Straub, whose backyard abutted the Boilard backyard, was the person who informed the South Berwick police dispatcher that he was alarmed and concerned because of the loud verbal quarrel between Donald Boilard and one of his children intermixed with child crying. He was posi-

tive, so he testified, that he did not tell the dispatcher that Mr. Boilard was beating his children, but only advised that there was a domestic problem going on and that he and his wife were concerned because of the level of noise involved. Accepting the information furnished by Mr. Straub, who, because of his hearing faculties, may be viewed in an equivalent position as an eye-witness citizen-informer, inherently trustworthy without the need for independent verification of the person's reliability and credibility (*see State v. Smith*, 379 A.2d 722, 725 (Me.1977)), we cannot see how this stated general information could serve as the basis of probable cause that Mr. Boilard was unlawfully beating his children. The dispatcher characterized the complaint, so Officer Gagnon testified, as *sounding like* he (Boilard) was beating his kids. But our Criminal Code does provide that a parent is justified in using a reasonable degree of force against his minor child, when and to the extent that he reasonably believes it necessary to punish such child's misconduct. 17–A M.R.S.A. § 106(1). True, this justification does not apply to the purposeful or reckless use of force that creates a substantial risk of death, serious bodily injury, or extraordinary pain. *Id.* § 106(4). We hold that the State completely failed to prove that the police had probable cause of criminal activity at the Boilard home justifying a forceful warrantless entry on proof of exigent circumstances.

Since we have determined that no probable cause existed to support the warrantless entry for the purpose of conducting a search to observe, and talk to, the children, we need not reach the issue, whether the police entry was made under exigent circumstances excusing the warrant requirement. *See State v. Sweatt*, 427 A.2d 940, 950 (Me.1981).

### 4. Denial of Suppression Motion

 Despite the illegality of the entry into Boilard's home, it is beyond question that the exclusionary rule does not extend to suppress evidence of independent

crimes taking place as a reaction to an unlawful arrest or search. *State v. Kittleson,* 305 N.W.2d 787, 789 (Minn.1981); *Commonwealth v. Saia,* 372 Mass. 53, 57–58, 360 N.E.2d 329, 332 (1977). We agree completely with the ruling of the Oregon Court of Appeals in *State v. Burger,* 55 Or.App. 712, 639 P.2d 706 (1982):

> We decline to hold that after an unlawful entry evidence of subsequent crimes committed against police officers must be suppressed. Such a rule would produce intolerable results. For example, a person who correctly believed that his home had been unlawfully entered by the police could respond with unlimited force and, under the exclusionary rule, could be effectively immunized from criminal responsibility for any action taken after that entry. We do not believe that either the state or federal constitution compels such a result. (citation omitted)

55 Or.App. at 716, 639 P.2d at 708. The District Court correctly denied Boilard's motion to suppress evidence of alleged criminal acts committed by him against Officer Gagnon, even if Gagnon's entry into Boilard's home was illegal.

The court is unanimous to this point in concurrence respecting treatment of the issues raised by the defendant's motion to dismiss the charges and to suppress the evidence of what transpired in the Boilard home. In the posture of this appeal, my colleagues do hold that the defendant's appeal should be denied and the Superior Court judgments of conviction be affirmed.

But, with due respect for the majority holding, I view the instructions given at trial completely inadequate to inform the jury respecting the essential elements of the crimes charged to the extent of constituting obvious error; I dissent and would vacate the judgments of conviction on the ground stated and remand to the Superior Court for further proceedings.

4. *See* note 3, *supra.*

### *Inadequate jury instructions*

Although the illegality of Officer Gagnon's entry into Boilard's home does not give rise to the suppression of Boilard's alleged assault on Officer Gagnon, the illegal entry allowed Boilard to use reasonable force to defend his home. 17–A M.R.S.A. § 104(1) (1983).[4]

The trial judge instructed the jury on the elements of the crime of assault, 17–A M.R.S.A. § 207 (1983), as follows:

> In order for the State to prove beyond a reasonable doubt that the Defendant, Donald Boilard, beyond a reasonable doubt committed the crime of assault against a police officer, Peter Gagnon, the State must convince you beyond a reasonable doubt of the following three elements or facts. First, that the named victim in the complaint, Peter Gagnon, suffered offensive physical contact. Secondly, that the defendant caused such offensive physical contact to Peter Gagnon and, thirdly, that the Defendant's conduct which caused such offensive physical conduct to Peter Gagnon was done intentionally, knowingly or recklessly.

At no time did the trial judge instruct the jury that, if they found Officer Gagnon to be a criminal trespasser, Boilard could have used reasonable force in ejecting him from his home under 17–A M.R.S.A. § 104(1) (1983).

I take notice that counsel for Mr. Boilard may not have fully protected himself on this record in raising his objections to the charge respecting the stated omission insofar as the assault accusation is concerned in compliance with M.R.Crim.P., Rule 30(b). Although he had argued very distinctly on his motion for acquittal at the close of the State's case, renewed for the record at the close of all the evidence, that Officer Gagnon did not have probable cause to believe that Boilard was guilty of criminal misconduct at the time of his warrantless forceful entry into the Boilard residence, and that

under the circumstances Mr. Boilard was justified under the law to physically remove Officer Gagnon from his home as a criminal trespasser provided the amount of force used was reasonable and nondeadly, nevertheless, in his objections to the justice's charge as given, counsel was not so articulate and may have limited his objection to the instructions as they related to the charge of obstructing government administration, without meaning to do so. Counsel's statement to the court was:

> Your Honor, I would ask that the Court—I felt that the Court's explanation of [a] person's justification [meaning Mr. Boilard] for *these* acts [of Mr. Boilard] based on the unlawful, based on the officer's use of unlawful force got swallowed and I would like the Court to reiterate the standard for possible defense on the obstructing government administration. (Emphasis added.)

Though the trial justice should have understood that the theory of the defense was based on the defendant's purported right to the use of reasonable force in removing Officer Gagnon from the home, not only in the case of obstruction of government administration, but also in relation to the charge of assault, nevertheless, he refused to instruct the jury on that essential element as to both crimes.

Insofar as this defendant's claim of error in relation to the charge of assault may be considered as not saved at trial, I feel obliged to consider it on the basis of a possible obvious error affecting the substantial rights of the defendant pursuant to M.R.Crim.P., Rule 52(b). *See State v. Raubeson,* 488 A.2d 1379, (Me.1985), slip opinion dated March 7, 1985; *State v. Griffin,* 487 A.2d 247 (Me.1984). *See also State v. Powell,* 452 A.2d 977 (Me.1982). It is mandatory on the part of a trial judge to instruct the jury as to the fundamental principles of law which control the case. He has the duty to inform the jury in clear and concise terms how the law is applicable to the particular facts which are put in issue by the evidence and the failure to present to the jury the theory of the defense, based as it was in this case on the essential elements of the crimes charged, constitutes obvious reversible error. *State v. Bahre,* 456 A.2d 860, 866 (Me.1983); *see also State v. Carmichael,* 405 A.2d 732, 736 (Me.1979).

It is beyond question that a person's home, and the rights of an individual within that home, have a special place in our jurisprudence. The constitutional guaranty to the people that they shall be secure in their persons, houses, papers and possessions from all unreasonable searches and seizures, and the implementation of the privilege by prohibiting the issuance to governmental authorities of warrants of seizure of persons or entry into homes except, as interpreted by the courts, at the hands of a neutral and detached magistrate upon the finding of probable cause—supported by oath or affirmation, show the sanctity with which the citizen's person and home have been considered since the founding of our republic.

Based on very sketchy information respecting a domestic disturbance amounting at the most to a breach of the public peace due to loud vocal exchanges between a father and his school-age son, Officer Gagnon, who was dispatched to investigate the complaint, practically stormed the Boilard home, even though all was very quiet when he reached the house, and, after his forceful entry into the man's home, refused to leave, notwithstanding Mr. Boilard's repeated requests that he do so. Clearly, such an unlawful entry and refusal to depart fall within the definition of criminal trespass under our law. 17-A M.R.S.A. § 402 (1983) ("A person is guilty of criminal trespass if, knowing that he is not licensed or privileged to do so, ... he enters any dwelling place, ... or remains [therein] in defiance of a lawful order to leave....").

I would not adopt a rule that a police officer is in all cases immune from criminally trespassing while he purportedly carries out his official duties. Although

courts have held that there is no right to resist a police officer who is executing a search warrant that is later found to be invalid, *see e.g. U.S. v. Ferrone*, 438 F.2d 381, 390 (3rd Cir.) *cert. denied*, 402 U.S. 1008, 91 S.Ct. 2188, 29 L.Ed.2d 430 (1971), those courts did not extend their holding to cases of warrantless searches, *Id.* at 390, n. 19. *See generally* W. LaFave, *Search & Seizure* § 1.11(b) at 217 (1978).

The distinction between an entry based on an *illegal warrant* and one *without a warrant* is crucial. In seeking a warrant, officers must make a comprehensive showing of the evidence in their possession before a neutral and detached magistrate. In addition to the protection received through having a neutral judge decide whether a warrant should issue, suspect individuals benefit from the comprehensive review and the careful deliberation which police officers must undertake prior to the presentation of their warrant application to the magistrate. Such procedures, even if they result in the issuance of an invalid warrant, by their very existence, protect our basic freedoms.

Such protections are denied the people, when officers make illegal *warrantless* entries. Police who make such illegal warrantless entries into dwelling places are, furthermore, violating the express prohibitions of 17–A M.R.S.A. § 402, and homeowners so invaded should be permitted to invoke the privilege to defend their premises granted to them under 17–A M.R.S.A. § 104.[5] Such an illegal entry occurred in the case at bar and, thus, Boilard could only be convicted of assault if he used *unreasonable force* in defending his home from invasion by the police. *See State v. Benson*, 155 Me. 115, 120, 151 A.2d 266, 269 (1959); *State v. Brown*, 302 A.2d 322 (Me.1973). The failure to instruct the jury on this defense in light of the illegal entry was prejudicial error and I would vacate

the jury verdict in the Superior Court convicting Boilard of assault.

My reasons for vacating the conviction for obstructing government administration parallel those outlined in my discussion of the assault charge. In his instruction on obstructing government administration, the judge told the jury:

In order for the State to prove beyond a reasonable doubt that Donald Boilard committed the crime of obstructing government administration, the State must convince you beyond a reasonable doubt of these following three facts. First, that Donald Boilard used force, violence or intimidation against a public servant. Secondly, that the force, violence or intimidation was used with the intent to interfere with that public servant and, third, if the public servant was performing or purporting to perform an official function.

\* \* \* \* \* \*

Regarding the third fact, that is, that the Defendant's conduct was directed at a public servant performing or purporting to perform an official function, the State must prove beyond a reasonable doubt that Officer Gagnon was an official officer or employee of that branch of government and that Officer Gagnon at the time of the alleged offense was acting within the scope of his power as a law enforcement officer, that is, doing what he's employed to do as opposed to being on the property of his own.

Boilard objected to this instruction as insufficiently informing the jury of the right to defend against a police officer's unlawful entry into a home.

The statute prohibiting the obstruction of government administration reads in pertinent part:

A person is guilty of obstructing government administration if he uses force, violence, intimidation or engages in any criminal act with the intent to

---

5. I would not decide in this case what my position would be, if the Legislature should prohibit the use of force by home owners against war-

rantless nonconsensual entries by police in the performance of their official duties.

interfere with a public servant performing or *purporting to perform* an official function. (emphasis added).

However, illegal entries by police officers into civilians' homes are not part of the official function of the police. *State v. Hagler*, 32 N.C.App. 444, 446–48, 232 S.E.2d 712, 714–15 (1977); *State v. Sparrow*, 276 N.C. 499, 511–513, 173 S.E.2d 897, 905–906 (1970); *People v. Young*, 100 Ill. App.2d 20, 23, 241 N.E.2d 587, 590 (1968); *King v. State*, 246 Miss. 86, 149 So.2d 482 (1963); *Pettis v. State*, 209 Miss. 726, 730, 48 So.2d 355, 357 (1950).

Under both our constitutions, state and federal, a warrantless entry into a home by a police officer is presumed unreasonable and illegal; the *physical* entry of a home is the *chief evil* against which our constitutions seek to guard. The individual's right to privacy and the governmental responsibility to enforce the law for the public good meet in confrontation at the door of one's home. For police warrantless searches and seizures inside a home to pass constitutional muster, absent a consensual entry, the state must prove the coexistence of probable cause and exigent circumstances. *See Payton v. New York*, 445 U.S. 573, 585–86, 100 S.Ct. 1371, 1379–80, 63 L.Ed.2d 639 (1980); *Welsh v. Wisconsin*, —— U.S. ——, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). *See also State v. Morse*, 480 A.2d 183 (N.H. 1984). As we stated previously, even without considering the question of the existence of exigent circumstances, Officer Gagnon did not have probable cause to make a warrantless entry into the Boilard residence over the objections of Mr. Boilard, and the police intrusion amounted to a criminal trespass. This, under 17–A M.R.S.A. § 104, justified the use of reasonable force by the defendant against the forced entry, and, once the forced entry was executed, he was further entitled to use such reasonable force to remove the trespassing officer upon the latter's refusal to leave on request. For the same reason, the defendant in his use of such force as was reasonable under the circumstances to prevent the unlawful entry into, or remove the tres-

passer from, the home would be immunized to that extent from the charge of obstructing government administration. The failure of the trial justice to give adequate instructions to the jury in connection with the respective rights and duties of the parties in the use of force in the case of an illegal entry requires that the judgments below be vacated, both on the assault charge as on the accusation of obstructing government administration. *See People v. Curtis*, 70 Cal.2d 347, 74 Cal.Rptr. 713, 721, 450 P.2d 33, 41 (1969). I would vacate the judgments of conviction and remand to the Superior Court for further proceedings.

But, in accordance with the majority decision, the entry will be:

Judgments of conviction affirmed.

McKUSICK, C.J., and ROBERTS, VIOLETTE, GLASSMAN and SCOLNIK, JJ., concurring.

We agree fully with the first four parts of the court's opinion and, without going further, believe that defendant's conviction must be affirmed. We do not believe it appropriate in this case to address the jury instruction question.

Defendant never raised the issue of section 104 justification, either at trial or in his brief on appeal. Defendant's brief contends only that the officer's entry into his home was illegal so that the evidence of the subsequent crime inside the home should have been suppressed. Even after the State threw down the gauntlet in its brief, stating that "[i]n the absence of a defense justifying his conduct, see 17–A M.R.S.A. § 104, the defendant by this appeal seeks in effect to acquire a privilege to assault and obstruct an officer by a misapplication of the law of search and seizure," defendant failed to file any reply brief in response. At oral argument before us, defendant's counsel explicitly stated as his reason for not raising the defense of justification that "in a situation as we had here, where the defense was a denial of the contact made [by defendant upon the offi-

cer], one has to make a tactical decision as to what is going to be argued to the jury."

That tactical decision not to argue a section 104 justification, for fear of weakening the primary defense of denial of assaultive conduct, was not so obviously wrong that the court below should have intervened to overrule counsel's choice of defense tactics, by giving the instruction on its own initiative. Except in unusual circumstances, a criminal defendant and his retained counsel should be allowed to decide for themselves whether or not to argue in the alternative. In any event, we can see here no obvious error within the intendment of M.R.Crim.P. 52(b). *Cf. State v. Raubeson,* 488 A.2d 1379, 1380 (Me.1985) (obvious error found where judge's instruction on a defense of justification conveyed an erroneous impression as to burden of proof). Defendant at no time effectively asserted the defense of justification. Following the familiar principle that points not preserved at trial or argued on appeal are considered waived, *e.g., State ex rel. Tierney v. Ford Motor Co.,* 436 A.2d 866, 870 (Me.1981); *State v. Desjardins,* 401 A.2d 165, 169 (Me.1979), we are not willing to reach out, without the help of either written or oral argument of counsel for either side, to decide legal contentions nowhere raised by defendant. On this direct appeal we would affirm the judgment of the Superior Court, without addressing any possible defect in the jury instructions that resulted from the trial strategy of defense counsel.