CASE 54—INDICTMENT—MARCH 12.

# Mitchell v. Commonwealth.

88  349
f103 752

88  349
126  193

88  349
f133  612

APPEAL FROM CAMPBELL CRIMINAL COURT.

1. INDICTMENT.—As a general rule an indictment for an offense which is the creature of the statute is sufficient if it describes the offense in the language of the statute. If, however, the statute merely imposes a penalty for a common law offense, referring to the offense by its popular name, the pleader must define the offense by stating the common law element necessary to its commission.

2. SAME—BREAKING INTO DWELLING-HOUSE.—The offense of feloniously breaking into a dwelling-house, or any part thereof, and taking away "anything of value," described in section 4, of article 5, chapter 29, Gen. Stats., is a creature of the statute, and an indictment following the language of the statute is sufficient. It is not necessary, therefore, to charge, as in case of larceny, that the taking was with felonious intention of depriving the owner permanently of his property and converting it to the use of the taker without the owner's consent.

3. SAME.—In determining whether the place which has been entered constitutes a part of the dwelling-house, both the situation and the use should be considered.

In this case a cellar is held to have been a part of the dwelling-house, although there was no internal communication between it and the dwelling.

Mitchell v. Commonwealth.

BUTLER HAWKINS for appellant.

1. An indictment for housebreaking and larceny, under section 4, article 5, chapter 29, Gen. Stats., in which there is a failure to state that the taking was with the intention to deprive the owner of his property, and to convert it to the use of the person taking, is essentially defective on motion in arrest of judgment. (Ward v. Commonwealth, 14 Bush, 234.)

2. An entry into the cellar of a dwelling-house, having no internal communication with the dwelling, without breaking or removing a fastening, does not constitute the offense of breaking into a dwelling-house. (Bishop on Statutory Crimes, sec. 282; Commonwealth v. Bruce, 79 Ky., 560.)

P. W. HARDIN for appellee.

An indictment that follows the language of the statute is good, without further description of the offense.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The indictment against the appellant, William Mitchell, charges him with feloniously breaking and entering the dwelling-house of Julius Schultz by forcibly opening a cellar door and feloniously taking therefrom certain articles of property (naming them) of value, belonging to Schultz.

Section 4, article 5, chapter 29, of the General Statutes, provides: "If any person shall feloniously take out of or from any church, chapel or meeting-house, school-house, court-house, or other public building, any goods or chattels, or other thing of value belonging thereto, or shall rob any person in his dwelling-house or place, or in any booth or tent in a fair or market, he, his wife, children, or servants or other person then being within, *or shall feloniously break any dwelling-house, or any part thereof, or any outhouse belonging to or used with any dwelling-house, and feloniously take away anything of value*, although the owner or any person may

not be there, he shall be confined in the penitentiary not less than two nor more than ten years."

The accused made a motion in arrest of judgment, which, under our practice, can only be sustained when the facts stated in the indictment do not constitute a public offense within the jurisdiction of the court. The ground urged in support of it is, that the indictment does not charge, as is necessary in case of larceny, that the taking was with the felonious intention of depriving the owner permanently of his property, and converting it to the use of the taker without the owner's consent.

It does, however, aver that the accused feloniously broke and entered the dwelling-house—giving the manner of it; that he feloniously took the property therein named, and that it was of value. It conforms to the wording of the statute, and the offense, as stated in the statute, is complete within itself. It is the creature of the statute; and where this is so it is, as a general rule, sufficient to describe the offense in the language of the statute. (1 Wharton's Criminal Law, section 364.)

The case of Ward v. Commonwealth, 14 Bush, 233, and upon which the appellant relies, is distinguishable from this one. It was an indictment under the same section of the statute as this one, but under that clause which provides, "if any person shall *rob* any person in his dwelling-house or place," etc.

It is never sufficient to charge an offense merely by way of legal conclusion. If a statute refers to a common law offense by its popular name—as, for instance, "robbery"—and proceeds to impose a penalty for its commission, it is not sufficient to charge the accused with its commission in the statutory terms alone. (1

Wharton's Criminal Law, 7th Ed., section 372.) In such a case, the pleader must define the offense by stating the common law elements necessary to its commission.

The evidence shows that the property was taken out of a cellar under the dwelling-house, there being no internal communication between them. It was necessary to go out of the house into the yard to enter the cellar. The door to it opens out into the open air. It had no fastenings, but could not be opened without the use of force.

It is therefore now urged that the cellar was no part of the dwelling-house, and that the accused, if guilty, is so of trespass and *petit* larceny only.

There is a diversity of decision as to what does, and what does not, in law constitute a part of the dwelling-house. Some cases include all within the curtilage; and this, according to Blackstone, appears to have been the common law rule; while others are made to turn upon the use.

It has been said that burglary may be committed by breaking into a dairy or laundry, standing near enough to the dwelling-house to be used as appurtenant to it; or into such outbuildings as are necessary to it *as a dwelling*. (State v. Langford, 1 Devereux, 253.) Also by breaking into a smoke-house, opening into the yard of the dwelling-house and used for its ordinary purposes; and cases are to be found holding that if an outhouse be so near the dwelling proper that it is used with it as appurtenant to it, although not within the same inclosure even, yet burglary may be committed in it. (State v. Twitty, 1 Haywood (N. C.), 102.) It need have no internal communication with the dwelling proper to give it

this character. In Rex v. Lithgo, 1 Russell & Ryan, 357, the breaking was into a warehouse. There was no internal communication between it and the dwelling of the owner, but they were contiguous, inclosed in the same yard, and *under the same roof;* and it was held to be burglary.

Mr. East says: · " It is clear that any outhouse within the curtilage or same common fence as the mansion itself must be considered as parcel of the mansion. . . . . . . If the outhouses be adjoining to the dwelling-house, and occupied as parcel thereof, though there be no common inclosure or curtilage, they may still be considered as parts of the mansion." ( 2 East, p. 493.)

It is difficult to lay down any general rule upon the subject, owing to the nice distinctions to be found in some of the cases. It seems to us, however, that both the use and the situation should be considered. Can the place which has been entered, considering both its situation and use, be fairly considered as appurtenant to and a parcel of the dwelling-house ; or, as the older writers say, " a parcel of the messuage ?" If so, then burglary may be committed by breaking into it.

The dwelling-house of a man has peculiar sanctity at common law. It is his castle. The law intends its protection, because it is the family abode. The object is to secure its peace and quiet, and, therefore, the burglar has always been liable to severe punishment. The law throws around it its protecting mantle because it is the place of family *repose.* It is therefore proper not only to secure the quiet and peace of the house in which they sleep, but also any and all outbuildings which are prop-

erly appurtenant thereto, and which, as one whole, contribute directly to the comfort and convenience of the place as a habitation. If this reasoning be correct, then any which are not so situated, or are not so used, should not be regarded as a part of the dwelling, although they may, in fact, be within the curtilage. If there for other distinct purposes, as, for instance, a storehouse for the vending of goods, or a shop for blacksmithing, and the dwelling is equally convenient and comfortable without them, and they are not, in fact, a part of it, as by being under the same roof, so that the breaking into them will not disturb the peace and quiet of the household, then they should not be regarded as a part of it in considering the crime of burglary, or the offense named in the statute. (Armour v. The State, 3 Humphreys, 379.)

If, however, an outhouse, having no internal communication with the dwelling proper, may be considered as so appurtenant to it that burglary may be committed therein, surely it would seem it should be so held as to a cellar under the dwelling, although there may be no means of internal communication between them. It is under the same roof. It is a part of the house in which the occupant and his family sleep. It is essentially part and parcel of the habitation. It is manifest, however, that the statute above cited includes it. It says: "Or shall feloniously break any dwelling-house *or any part thereof, or any outhouse belonging to or used with any dwelling-house.*" The language is quite sweeping; and it is clear it was the legislative intention in enacting it to embrace not only every part of the dwelling, but every outhouse properly a parcel of and appurtenant to it. It at once strikes the ordinary observer that it was not

intended the cellar of a dwelling-house should be excluded from its operation; and to so hold would not only be in the face of the language used, but unreasonable.

The accused was convicted upon altogether circumstantial evidence. It was for the jury to weigh it, however, and to determine from those circumstances his innocence or guilt.

Judgment affirmed.