Harry C. STEWART, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 88–CA–2643–MR.

Court of Appeals of Kentucky.

Aug. 17, 1990.

Richard C. Gibson, Appellate Public Advocate, Louisville, for appellant.

Frederic J. Cowan, Atty. Gen., Joseph R. Johnson, Asst. Atty. Gen., Frankfort, for appellee.

Before HOWERTON, C.J. and HOWARD and McDONALD, JJ.

HOWERTON, Chief Judge.

Harry C. Stewart appeals from a judgment of the Kenton Circuit Court and sentence of five years' imprisonment for second-degree burglary entered November 29, 1988. His sentence was enhanced to ten years as a persistent felony offender II, KRS 532.080(2). We affirm.

Stewart was arrested for second-degree burglary when his ex-girlfriend, Rosemary Gent, reported to police that Stewart told her he had stolen some tools and other items from the residence of Claude Hicks. The burglary took place sometime between April 28 and May 1, 1988, and was reported to police on May 9, 1988. At trial, the only evidence against Stewart was the testimony of Gent, Hicks, a patrolman who responded to the call, and a police detective who was later assigned to investigate the case. Hicks testified as to the items stolen. In addition to testifying that Stewart told her he stole the items, Gent also testified that she saw the items in his apartment.

At oral argument, the briefed issue concerning the supposed hearsay testimony was dropped. The remaining issue is whether a basement with no interior entrance to the house was a dwelling within the meaning of KRS 511.010(2). Stewart argues it was not and thus he was entitled to a directed verdict of acquittal. At oral argument, defense counsel stated that if Stewart were guilty of anything, it should be burglary in the third degree, entering or remaining unlawfully in a building. KRS 511.040(1). Burglary in the second degree requires entering or remaining unlawfully in a dwelling, with intent to commit a crime. KRS 511.030(1). "Dwelling" is defined in KRS 511.010(2) as "a building which is usually occupied by a person lodging therein."

At common law, the offense of burglary was aimed at the security of the habitation rather than the security of property. Annot., 43 ALR 2d 831, 835 (1955) [hereinafter "43 ALR 2d"]. Historically, this protection was not limited to the house itself, but extended to certain outbuildings, even though these might be physically separated from the house, as these were considered part and parcel of the dwelling. *Id.* at 835. Generally, if a structure's use "contributes materially to the comfort and convenience of habitation in the dwelling house," *Id.* at 838, then it will be considered part of the dwelling for purposes of the burglary statute. In the present case, Hicks testified that he had his laundry room, a refrigerator, and a workshop in the basement. As

such, it appears that the presence of these items would meet the use test for the comfort and convenience of the occupants of the house. *Id.* at 835, 838. If a detached outbuilding can be considered part of the dwelling, depending on its proximity to the house and the use put to it, *Id.*, then a basement under the same roof as the house presents an even stronger case. *See Mitchell v. Commonwealth*, 88 Ky. 349, 354, 11 S.W. 209 (1889).

In *Mitchell*, the defendant was found guilty of feloniously breaking and entering a dwelling house by forcibly opening a cellar door and taking property. 88 Ky. at 350, 11 S.W. 209. The applicable statute was broader than our present KRS 511.010(2) in that it proscribed "felonious[ly] break[ing] any dwelling-house, or any part thereof, or any outhouse belonging to or used with any dwelling-house." 88 Ky. at 350, 11 S.W. 209. Nevertheless, the reasoning used in that case compels us to believe that a cellar or basement under almost any statutory scheme would be considered part and parcel of the dwelling, whether it could be reached from the interior of the house or only from an exterior door. In *Mitchell*, the court stated, 88 Ky. at 353–354, 11 S.W. 209:

The law throws around [the dwelling house] its protecting mantle because it is the place of family *repose.* It is therefore proper not only to secure the quiet and peace of the house in which [the family] sleep[s], but also any and all outbuildings which are properly appurtenant thereto, and which, as one whole, contribute directly to the comfort and convenience of the place as a habitation. If this reasoning be correct, then any which are not so situated, or are not so used, should not be regarded as a part of the dwelling, although they may, in fact, be within the curtilage. If there for other distinct purposes, as, for instance, a storehouse for the vending of goods, or a shop for blacksmithing, and the dwelling is equally convenient and comfortable without them, and they are not, in fact, a part of it, as by being under the same roof, so that the breaking into them will

not disturb the peace and quiet of the household, then they should not be regarded as a part of it in considering the crime of burglary, or the offense named in the statute. (Armour v. The State, 3 Humphreys, 379.)

If, however, an outhouse, having no internal communication with the dwelling proper, may be considered as so appurtenant to it that burglary may be committed therein, surely it would seem it should be so held as to a cellar under the dwelling, although there may be no means of internal communication between them. It is under the same roof. It is a part of the house in which the occupant and his family sleep. It is essentially part and parcel of the habitation. (Emphasis in original.)

In *California v. Zelaya*, 194 Cal.App.3d 73, 239 Cal.Rptr. 289 (1987), the defendant was found guilty of first-degree residential burglary when he broke into a garage and basement of an apartment building. The basement held locked storage areas for the tenants. The court held that areas of the apartment house entered by the defendant were functionally connected with and an integral part of the building's living quarters so as to be part of an "inhabited dwelling house" within the meaning of California Penal Code § 460. 239 Cal.Rptr. at 291. "Dwelling," as defined in KRS 511.-010(2), closely resembles that in *Zelaya*. Therefore, we believe that *Mitchell*, while relying on a broader definition of "dwelling," is still applicable in this situation.

Even though Hicks's basement could not be reached without going outside his house and entering a separate, locked door, it was correctly determined by the trial court to be part and parcel of the residence. *Mitchell*, 88 Ky. at 354, 11 S.W. 209; *see also Mason v. Commonwealth*, 101 Ky. 397, 399, 41 S.W. 305 (1897).

The standard for directing a verdict has been stated:

With the evidence viewed in the light most favorable to the Commonwealth, if the totality of the evidence is such that the trial judge can conclude that reasonable minds might fairly find guilt beyond a reasonable doubt, then the evidence is sufficient and the case should be submitted to the jury. If the evidence cannot meet this test it is insufficient and a directed verdict of acquittal should be granted.

*Commonwealth v. Sawhill*, Ky., 660 S.W.2d 3, 4 (1983). Based on the testimony of Gent, reasonable minds could find Stewart guilty of second-degree burglary. Thus, the trial court did not err in refusing to direct a verdict.

Based on the above, the judgment of the Kenton Circuit Court is affirmed.

All concur.