**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0836n.06

No. 14-5613

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Nov 05, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| YAHIR LARA, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellant.** | ) | |
| | ) | |

Before: KEITH, MOORE, and STRANCH, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Yahir Lara pleaded guilty to illegally reentering the United States after removal subsequent to a conviction for an aggravated felony in violation of 8 U.S.C. § 1101(a)(43). R. 18 (Order Accepting Plea Petition) (Page ID #22–30). The probation office classified Lara's prior conviction for aggravated burglary as a "crime of violence" pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii) (2013) and recommended the attendant sixteen-level enhancement. R. 29 at 5 (Presentence Investigation Report) (Page ID #106). Lara objected to the sixteen-level enhancement, arguing that his conviction for aggravated burglary under Tennessee Code Annotated § 39-14-403 (2009) was not a crime of violence because it did not qualify as a burglary of a dwelling within the meaning of U.S.S.G. § 2L1.2(b)(1)(A) & cmt. n.1(B)(iii). *See* R. 22 (Def.'s Sentencing Position) (Page ID #35–53). Lara argued that Tennessee's definition of "habitation," Tennessee Code Annotated § 39-14-401(1), is broader than the generic definition of "dwelling." *See* R. 22 (Def.'s Sentencing Position) (Page ID #35–

53). The district court overruled Lara's objection to the sixteen-level enhancement and imposed a twenty-four-month sentence. R. 31 at 19, 31 (Tr. Sentencing Hr'g) (Page ID #138, 150). Lara appeals his sentence, restating his objections to the enhancement. For the reasons set forth in this opinion, we **REVERSE** the district court's holding that Tennessee Code Annotated § 39-14-403 is categorically a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii) and **REMAND** for resentencing in accordance with this opinion.

## I. FACTS AND PROCEDURE

In 2009, Lara pleaded guilty to committing aggravated burglary for "intentionally, knowingly, or recklessly enter[ing]" a habitation "without the effective consent of the property owner" in violation of § 39-14-403. R. 22-1 at 1 (State Ct. Information) (Page ID #51); R. 22-2 at 1 (State Ct. J.) (Page ID #53). Lara is a Mexican national. At the time of Lara's 2009 conviction, he was without legal immigration status, and so he was deported. R. 1 (Indictment) (Page ID #1). In January 2014, a grand jury indicted Lara for illegally reentering the United States after removal subsequent to a conviction for an aggravated felony in violation of 8 U.S.C. § 1101(a)(43). R. 1 at 1 (Indictment) (Page ID #1). On March 14, 2014, Lara pleaded guilty to the charged offense of illegal reentry. R. 18 (Order Accepting Plea Petition) (Page ID #22–30).

The United States Probation Office completed a presentence investigation report ("PSR") and found that Lara's base offense level was eight. R. 29 at 5 (PSR) (Page ID #106). In addition, the probation office recommended a sixteen-level enhancement because it categorized Lara's prior conviction for aggravated burglary as a "crime of violence" pursuant to U.S.S.G.

2

§ 2L1.2(b)(1)(A)(ii). R. 29 at 5 (PSR) (Page ID #106). The probation officer concluded that Lara's total offense level was twenty-one with a criminal-history category of II, which carries a forty-one to fifty-one month sentencing range. R. 29 at 13 (PSR) (Page ID #114). Lara objected to the sixteen-level enhancement.[1] *See* R. 22 at 5–14 (Def.'s Sentencing Position). The crux of Lara's argument against the sixteen-level enhancement was that Tennessee Code Annotated § 39-14-401(1) defines "habitation" for the purposes of the state burglary statute more broadly than the generic definition of "dwelling" used in the Guidelines. *See* R. 22 at 5–14 (Def.'s Sentencing Position) (Page ID #39–48). Lara focused on § 39-14-401(1)(C), arguing that the inclusion of "structure[s] appurtenant to" the principal structure or vehicle "adapted for the overnight accommodation of persons," *see id.* §§ (A)–(B), broadens Tennessee's aggravated-burglary statute to include structures not intended or used for human habitation, such as a shed. *See* R. 22 at 5–7 (Def.'s Sentencing Position) (Page ID #40–42).

The government offered two arguments in response to Lara's objections. First, it contended that Lara's argument was foreclosed by *United States v. Nance*, 481 F.3d 882, 888 (6th Cir. 2007), which held that an aggravated burglary in Tennessee is a generic burglary, and therefore a violent felony under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). R. 25 at 4 (Gov't Sentencing Mem.) (Page ID #87). Moreover, the government asserted that *United States v. Garcia-Mendez*, 420 F.3d 454, 457 (5th Cir. 2005), foreclosed Lara's argument

---

[1]Lara also initially objected to the eight-level enhancement for offenders who have been convicted of an aggravated felony pursuant to U.S.S.G. § 2L1.2(b)(1)(C). R. 22 at 2–5 (Def.'s Sentencing Mem.) (Page ID #36–39). At the sentencing hearing, Lara withdrew his objection to the eight-level enhancement. R. 31 at 18 (Tr. Sentencing Hr'g) (Page ID #137).

3

because the Fifth Circuit held that a conviction under a Texas statute, which is similar to the Tennessee statute, was a crime of violence within the meaning of § 2L1.2(b)(1)(A)(ii). R. 25 at 4 (Gov't Sentencing Mem.) (Page ID #87). Second, the government argued that a structure "appurtenant to" a dwelling means a structure physically attached to the residence. R. 31 at 11 (Tr. Sentencing Hr'g) (Page ID #130). The district court rejected Lara's argument: "I don't think that there is a difference. The burglary of a habitation for purposes of Tennessee law is the burglary of a dwelling for purposes of a crime of violence." R. 31 at 19 (Tr. Sentencing Hr'g) (Page ID #138). The district court applied the sixteen-level enhancement, resulting in a guidelines range of forty-one to fifty-one months. R. 31 at 30 (Tr. Sentencing Hr'g) (Page ID #149). Ultimately, the district court concluded that the range was "more harsh than necessary" and imposed a twenty-four-month sentence. R. 31 at 30–31 (Tr. Sentencing Hr'g) (Page ID #149–50). Lara appeals the district court's determination that his prior conviction is a burglary of a dwelling, and therefore a crime of violence under § 2L1.2(b)(1)(A)(ii).

## II. ANALYSIS

### A. Standard of Review

We review de novo a district court's determination that a prior conviction is a crime of violence within the meaning of the Guidelines. *United States v. Denson*, 728 F.3d 603, 607 (6th Cir. 2013).

## B. Crimes of Violence Under Section 2L1.2

The Guidelines require higher sentences for defendants previously deported who have been convicted of a "crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). Section 2L1.2(b)(1)(A) defines a "crime of violence" as

> any of the following offenses under federal, state, or local law:
> murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

With respect to § 2L1.2, there are two approaches to determine whether a conviction qualifies as a crime of violence: the elements approach and the enumerated-offense approach. *See United States v. Cooper*, 739 F.3d 873, 878 (6th Cir. 2014). The elements approach applies when the statute has a specific element—"the use, attempted use, or threatened use of physical force against the person of another." *United States v. McFalls*, 592 F.3d 707, 712 (6th Cir. 2010). Under the enumerated-offense approach, an offense is not a predicate offense if the statute "encompasses more conduct than the generic definition" of the enumerated-offense crime. *Id.* Under the categorical approach mandated by the Supreme Court, an offense qualifies as a predicate offense if "the elements of the statute forming the basis of the defendant's prior conviction . . . are the same as, or narrower than" the elements of the offense as it is commonly

understood—the "generic crime." *Descamps v. United States*, --- U.S. ---, 133 S. Ct. 2276, 2281 (2013) (ACCA case); *see also Cooper*, 739 F.3d at 878 (Guidelines § 4B1.2(a) case). If the statute criminalizes conduct that the generic crime does not, then a conviction is not a predicate offense under the categorical approach. *United States v. Taylor*, 495 U.S. 575, 599 (1990).

It is important to note the difference between the definitions of a "crime of violence" in U.S.S.G. § 2L1.2 and in § 4B1.2(a). Section 4B1.2(a) includes the so-called "residual clause," under which a conviction qualifies as a crime of violence if the offense "otherwise involves conduct that presents a serious potential risk of physical injury to another." Section 2L1.2 contains no comparable language. *Compare* U.S.S.G. § 2L1.2, *with* § 4B1.2(a). Thus, the residual-clause analysis is not applicable to § 2L1.2.

We "analyze a crime of violence under the career-offender guideline just as we do a 'violent felony' under the [ACCA]," and therefore we typically rely on ACCA cases to assist our analysis of § 4B1.1 and § 4B1.2. *See Denson*, 728 F.3d at 607. We cannot do so in this case with respect to the enumerated-offense analysis because § 2L1.2 cmt. n.1(B)(iii) lists "burglary of a dwelling" as a crime of violence, whereas the ACCA includes "burglary" as a violent felony. *Compare* U.S.S.G. § 2L1.2(b)(1)(A)(ii) & cmt. n.1(B)(iii), *with* 18 U.S.C. § 924(e)(2)(B). Accordingly, although § 39-14-403 qualifies as a violent felony under the ACCA, *Nance*, 481 F.3d at 888, *Nance* does not control our analysis of § 2L1.2(b)(1)(A)(ii) because we must decide whether § 39-14-403 qualifies as a generic burglary of a dwelling. In addition, the government does not argue that Lara's conviction includes a use-of-force element, and therefore we do not

address whether § 39-14-403 is a crime of violence under the elements approach. Finally, we note that § 2L1.2 cmt. n.1(B)(iii) does not have a residual clause, so we do not consider whether the offense "involves conduct that presents a serious potential risk of physical injury to another." *See* U.S.S.G. § 4B1.2(a); *Cooper*, 739 F.3d at 878. Thus, the only issue before us is whether Lara's conviction is an enumerated offense. We must decide for the first time whether Tennessee's definition of "habitation"—and therefore burglary of a habitation—is broader than the generic definition of "burglary of a dwelling" in § 2L1.2 & cmt. n.1(B)(iii).

## C. Generic Burglary of a Dwelling

A generic burglary of a dwelling is a burglary of a structure used for the purpose of human habitation. *See McFalls*, 592 F.3d at 713. In *McFalls*, we considered whether a conviction for burglary of a dwelling in South Carolina is a crime of violence for the purposes of U.S.S.G. § 4B1.2. *Id.* at 712. We examined *Black's Law Dictionary* and the case law of other circuits to conclude that, under § 4B1.2, burglary of a dwelling requires an element of habitation. *See id.* at 713 ("[T]he 'required for human habitation' element is supported by at least two other circuit courts, which have relied on the *Black's Law Dictionary* definition of a dwelling."). Thus, a burglary statute is not generic if it applies to burglaries of structures that are not "place[s] of habitation." *Id.* at 714.

After ascertaining the generic definition of burglary of a dwelling, *McFalls* examined whether the South Carolina statute is generic. At the time of McFalls's conviction, South Carolina defined second-degree burglary as "enter[ing] a dwelling without consent and with

7

intent to commit a crime therein." S.C. CODE ANN. § 16-11-312(A) (West 2010). Section 16-11-10 defined "dwelling" for the purposes of the burglary statute as including "all houses, outhouses, buildings, sheds and erections which are within two hundred yards of [the dwelling house] and are appurtenant to it or to the same establishment of which it is an appurtenance." S.C. CODE ANN. § 16-11-10 (West 2010). We concluded that "[t]he generic definition of a burglary of a dwelling cannot fairly extend to intrusions into sheds two hundred yards from a residence," and therefore the South Carolina conviction was not a crime of violence under § 4B1.2. *McFalls*, 592 F.3d at 713.

## D. The Meaning of Tennessee's Aggravated Burglary Statute

When interpreting statutes, we begin by determining whether the meaning of the statute is plain. *United States v. Parrett*, 530 F.3d 422, 429 (6th Cir. 2008). To determine the plain meaning of the statute, we "'look[] at the language and design of the statute as a whole.'" *Id.* (quoting *United States v. Wagner*, 382 F.3d 598, 606–07 (6th Cir. 2004)). Only if the statute's meaning is not plain do we examine relevant legislative history. *Id.*

Tennessee categorizes burglary into three types: burglary of a habitation, burglary of a building, and burglary of a vehicle. *See* TENN. CODE ANN. §§ 39-14-402, 403; *United States v. Van Hook*, 640 F.3d 706, 710 (6th Cir. 2011). Lara was convicted of aggravated burglary under § 39-14-403. R. 22-1 at 1 (State Ct. Information) (Page ID #51); R. 22-2 at 1 (State Ct. J.) (Page ID #53). Section 39-14-403(a) defines "[a]ggravated burglary" as "burglary of a habitation as

defined in §§ 39-14-401 and 39-14-402." At the time of Lara's conviction, Tennessee defined

"habitation" as follows:

(1) "Habitation":
   (A) Means any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons;
   (B) Includes a self-propelled vehicle that is designed or adapted for the overnight accommodation of persons and is actually occupied at the time of initial entry by the defendant; and
   (C) Includes each separately secured or occupied portion of the structure or vehicle and each structure appurtenant to or connected with the structure or vehicle.

TENN. CODE ANN. § 39-14-401(1) (West 2009).[2]

We begin by examining the meaning of structures "appurtenant to" "any structure" or vehicle "designed or adapted for the overnight accommodation of persons." *Black's Law Dictionary* defines "appurtenant to" as "[a]nnexed to a more important thing." BLACK'S LAW DICTIONARY 123 (10th ed. 2014). The government argues that, under this definition, subsection (C) applies only to structures attached to the principal structure or vehicle—i.e., that annexation implies physical attachment. Appellee Br. at 12. This is certainly one plausible interpretation. But there are numerous other definitions of "annex," too:

I.  Without the idea of subordination.
    1. To join, unite (to);
II. To join in a subordinate capacity;
    2. To join or unite materially, as an accessory;

---

[2]The 2009 definition of "habitation" is identical to the current definition of "habitation" for the purposes of burglary offenses under Tennessee law. *See* TENN. CODE ANN. § 39-14-401 (West 2013).

3.  To add as an additional part to existing possessions (with or without local contiguity);
4.  To add to a composition or book, to append;
5.  To affix (a seal; *hence* a signature or other mark of action);
6.  To join or attach as an attribute or qualification;
7.  To add or attach as a condition; or
8.  To attach as consequence.

OXFORD ENGLISH DICTIONARY 483 (2d ed. 1989). Thus, "annex" can imply a physical connection between two things, or a relational connection as a subordinate or as an equal.

We turn then to the definition of an "appurtenance" because a "structure appurtenant to" another "structure or vehicle" is an appurtenance. *See* TENN. CODE ANN. § 39-14-401(1)(C). The definition of "appurtenance" is "[s]omething that belongs or is attached to something else; esp., something that is part of something else that is more important." BLACK'S LAW DICTIONARY 123 (10th ed. 2014). For additional guidance, we look to the *Oxford English Dictionary*, which defines "appurtenant" as "[b]elonging as a property or legal right" or "constituting a property or right subsidiary to one which is more important." OXFORD ENGLISH DICTIONARY 590 (2d ed. 1989). "Appurtenance" is defined as "[a] thing that belongs to another, a 'belonging'; a minor property, right, or privilege, belonging to another more important, and passing in possession with it; an appendage." OXFORD ENGLISH DICTIONARY 589–90 (2d ed. 1989). Accordingly, we conclude that "appurtenant to" can mean that an object is physically attached to another object, but it can also imply a relationship between two objects. It follows that an unattached shed, for example, is appurtenant to a house because the shed belongs to the house. Thus, Tennessee's definition of a "habitation" includes structures that would not be

10

considered "place[s] of habitation" under the generic formulation of the statute. *McFalls*, 592 F.3d at 714.

Nonetheless, the government contends that the structure and context of the Tennessee statute compel defining "appurtenant to" as "attached to" a structure or vehicle. Appellee Br. at 12. The government raises three structural arguments for this reading. First, it argues that the Tennessee definition of "habitation" includes only outbuildings that are "'separately secured and occupied portions' of a habitation," and therefore Tennessee has limited the application of the statute to structures used for human habitation. Appellee Br. at 10 (citing TENN. CODE ANN. § 39-14-403, Cmts. (West 2014)). Second, the government argues that the Tennessee definition is sufficiently narrow to qualify as a generic "dwelling" because "appurtenant to" is a synonym for "connected with." Appellee Br. at 13. Third, the government argues that every other part of Tennessee's definition of "habitation" includes structures that "serve the function of human habitation," and therefore the structure of the statute limits the application of the statute to outbuildings designed for human occupation. Appellee Br. at 12.

We reject the government's first argument. There are three clauses of § 39-14-401(1)(C). The first clause addresses "separately secured or occupied portion[s] of the structure or vehicle." We read "structure" and "vehicle" to refer to sections (A) and (B)—structures or vehicles that are "designed or adapted for the overnight accommodation of persons." TENN. CODE ANN. § 39-14-401(1)(A)–(B). Subsection (C) concerns certain "portion[s]" and "structure[s]" with a relationship to the principal structure or vehicle that is described in (A) or (B), hereinafter

referred to as the "principal structure." *See* TENN. CODE ANN. § 39-14-401(1)(C). The first clause of subsection (C) concerns "separately secured or occupied portion[s]" of the principal structure, such as an attached garage. *Id.* The second clause concerns "structure[s] appurtenant to" the principal structure. *Id.* And the third clause relates to "structure[s] . . . connected with" the principal structure. *Id.* The words "separately secured or occupied" appear only in the part of § 39-14-401(1)(C) that addresses "portion[s] of the structure or vehicle," and therefore we do not read the words to apply to the second and third clauses of subsection (C) that address "structure[s] appurtenant to or connected with the structure or vehicle." *Id.* We cannot read the words "separately secured or occupied" into the second or third clauses, because we "must give effect, if possible, to every clause and word of a statute." *Williams v. Taylor,* 529 U.S. 362, 404 (2000) (internal quotation marks omitted). Thus, "structure[s] appurtenant to" the principal structure do not need to be "separately secured or occupied portion[s]" to qualify as a habitation; the government's first argument fails. *See* TENN. CODE ANN. § 39-14-401(1)(C).

Likewise, we reject the government's second argument. The second clause of subsection (C) addresses structures "appurtenant to . . . the structure or vehicle." The third clause relates to structures "connected with the structure or vehicle." *Id.* We decline to read the words "appurtenant to" and "connected with" in § 39-13-401(1)(C) as synonyms because that approach fails to give effect to each clause of the statute. *See Williams,* 529 U.S. at 404.

To address the government's third structural argument, we turn to the Tennessee courts to determine whether they limit the application of § 39-14-401(1), and therefore § 39-14-403, to

structures designed or used for human habitation.  Tennessee courts' interpretation of Tennessee criminal law, "including the elements of a crime," bind this court, but whether "a crime is a crime of violence is a question of federal law."  *United States v. Rede-Mendez*, 680 F.3d 552, 555–56 (6th Cir. 2012).

The Tennessee Supreme Court has not offered guidance about whether § 39-14-403 applies to unattached, uninhabited structures.  The government cites *State v. Langford*, 994 S.W.2d 126, 128 (Tenn. 1999), arguing that the Tennessee Supreme Court limited aggravated burglary to "structures . . . adapted or designed for overnight accommodation."  Appellee Br. at 14.  But *Langford* offers no guidance about how to interpret § 39-14-401(1).  In *Langford*, the court considered whether the defendant had committed aggravated burglary of a duplex—a structure obviously "adapted for overnight accommodation of persons."  994 S.W.2d at 126–27; *see also* TENN. CODE ANN. § 39-14-401(A).  The court did not address whether an unattached, uninhabited structure qualified as a habitation because the issue was not before the court.  *See id.* at 127–28.

The Tennessee Court of Criminal Appeals does not offer guidance about the scope of § 39-14-403 either.  In *State v. Mickens*, No. W2000-03010-CCA-R3-CD, 2002 WL 1558504 (Tenn. Crim. App. Jan. 8, 2002), the court upheld a conviction under § 39-14-403 when the defendant burglarized an attached garage.  *Id.* at *1–2.  The court did not address whether the conviction would stand if the garage were unattached, and the court specifically noted that one of

the witnesses testified that the garage was attached. *See id.* at *1.[3] In addition, the Tennessee

Court of Criminal Appeals has upheld convictions for aggravated burglary of unoccupied,

uninhabited structures designed for human occupation and residence. *See, e.g.*, *State v. Howard*,

No. 02C01-9508-CR-00237, 1997 WL 170326, at *2 (Tenn. Crim. App. Apr. 11, 1997)

(upholding a conviction for aggravated burglary of an unoccupied home in foreclosure); *State v.*

*Ford*, No. 02C01-9304-CR-00078, 1994 WL 398811, at *1 (Tenn. Crim. App. Aug. 3, 1994)

(upholding a conviction for aggravated burglary of a vacant home lacking water, electricity, and

heat). But it has not considered the application of the statute to unattached structures that were

not designed for human occupancy.[4]

The government cites *State v. Cole*, No. W2005-01895-CCA-R3-CD, 2006 WL 359778,

at *2 (Tenn. Crim. App. Feb. 15, 2006), as evidence that § 39-14-403 does not apply to

unattached garages. Appellee Br. at 15. In *Cole*, a trial judge convicted the defendant of burglary

of a building in violation of § 39-14-402 at a bench trial. *Id.* at *1. The facts reveal that the

---

[3]The government argues that this case demonstrates that Tennessee courts limit the application of the aggravated burglary statute to outbuildings that function as habitations, and notes that the *Mickens* court cited the Sentencing Commission Comments of the Tennessee Code as authority for this limited reading of the statute. *See* Appellee Br. at 14–15. Although the government is correct that the Tennessee Court of Criminal Appeals cited the Sentencing Commission Comments as persuasive evidence of legislative intent, it overlooks the facts of the case. The court cites the Comments as authority to apply the aggravated burglary statute to a garage attached to the house. *See Mickens*, 2002 WL 1558504, at *1–2.

[4]A search of all Tennessee cases with convictions for aggravated burglary under Tennessee Code Annotated § 39-14-403 and "shed," "outbuilding," "outhouse," "bathhouse," and "unattached garage" yielded no results.

defendant burglarized an unattached garage. *Id.* at \*1–2. The record is unclear, however, as to whether the defendant was charged with aggravated burglary of a habitation, § 39-14-403. *See id.* at \*1–3. Without that information, it is impossible to determine whether the trial court rejected the application of the aggravated-burglary statute to burglary of an unattached garage, and so the case offers us little guidance about the scope of § 39-14-403.

The only Tennessee case addressing burglary of unattached, uninhabited buildings considers the application of a pre-1989 burglary statute to an unattached building, and it supports Lara's argument.[5] In *Fletcher v. State*, 78 Tenn. 338 (1882), the Tennessee Supreme Court considered whether the defendant, who had stolen bacon from a smoke house, could be convicted of burglary of a mansion house. *Id.* at 339. Although the court's opinion omits the precise definition of burglary, the operative meaning of a "mansion-house" at the time of the conviction was "not only the house in which one dwells, but also such out-houses as are appurtenant to the dwelling-house." TENN. CODE ANN. § 4672 (1873). The commentary to the statute expands on the definition of "mansion-house": "[T]he kitchen laundry, smoke-house and the dairy, are within its protection; but it is not burglary to break into a store situate within three feet of the dwelling, and enclosed in the same yard unless the store is necessary to the mansion-house as a dwelling." *Id.* Accordingly, the Tennessee Supreme Court considered all structures *belonging to* the mansion as part of the mansion and upheld the conviction.

---

[5]In 1989, the Tennessee legislature overhauled its criminal laws. *See Langford*, 994 S.W.2d at 127–28.

Moreover, the Tennessee Supreme Court has used "appurtenant to" to describe outbuildings as being within the scope of a properly issued warrant. *See, e.g.*, *Seals v. State*, 11 S.W.2d 879, 881 (Tenn. 1928) ("It is our opinion that a search warrant directing that a search be made of a principal building, identified by street number, authorizes the search of an outhouse so clearly appurtenant to and a part of the same premises as the coalhouse here involved."); *Worden v. State*, 273 S.W.2d 139, 141 (Tenn. 1954) ("[T]he holding of the Court in these, and similar cases, presupposes that the building mentioned in the warrant to be searched would include outhouses, vehicles upon the premises, and other places, which are appurtenant to the described building and are under the control of persons named in the warrant."). Thus, Tennessee courts have consistently considered structures "appurtenant to" a dwelling or principal building to mean "belonging to" or "necessary to" the primary dwelling or principal building.

The government cites the commentary to the Tennessee Annotated Code for the proposition that § 39-14-401(1)(C) is limited to structures attached to the principal structure and outbuildings that themselves "serve the function of human occupation." *See* Appellee Br. at 18. Tennessee courts use the comments as "evidence of legislative intent." *State v. Burkhart*, 58 S.W.3d 694, 698 (Tenn. 2001). Specifically, the comments clarify that "'[h]abitation' also includes garages and other outbuildings that are 'separately secured and occupied portions' of a habitation." TENN. CODE ANN. § 39-14-403, Cmts. (West 2014). The government argues that the comments limit the scope of subsection (C) to attached garages and buildings that function for human occupation. *See* Appellee Br. at 18. But we do not read the comments as restricting

the scope of the definition of statute. Rather, the comments clarify the scope of the first clause of § 39-14-401(1)(C): a habitation "[i]ncludes each separately secured or occupied portion of the structure." *Id.* The second clause does not restrict application to "separately secured or occupied" appurtenant structures. *See* TENN. CODE ANN. § 39-14-401(1)(C). We therefore find the government's argument unpersuasive.

Having considered and rejected the government's arguments, we conclude that Lara has the better argument under both a plain reading of the statute and the other applicable authorities. We therefore hold that a habitation under § 39-14-401(1)(C) could be a tool shed, outhouse, bathhouse, smokehouse, or other uninhabited outbuildings that belong to or serve the principal structure. Thus, § 39-14-403 is not categorically a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A).

This interpretation is consistent with other state courts' use and interpretation of the phrase "appurtenant to." For example, the Iowa Supreme Court defined an "appurtenance" as "[a] thing [that] stands in relation of an incident to a principal and is necessarily connected with the use and enjoyment of the latter." *State v. Pace*, 602 N.W.2d 764, 770 (Iowa 1999) (internal quotation marks omitted). The court applied that definition of appurtenance to conclude that "a step or stoop outside the door of a home, as well as the cement walkway leading to the step, would fall within the definition of an appurtenance to the house." *Id.* The North Carolina Supreme Court also used the phrase "appurtenant to" in order to imply belonging: "The term 'dwelling-house' includes within it not only the house in which the owner or renter . . . may live

and sleep, but all other houses appurtenant thereto, and used as part and parcel thereof, such as a kitchen, smokehouse, and the like . . . ."  *State v. Green*, 290 S.E.2d 625, 631 (N.C. 1982); *see also Mitchell v. Commonwealth*, 11 S.W. 209, 209–10 (Ky. 1889) ("It has been said that burglary may be committed by breaking into a dairy or laundry, standing near enough to the dwelling-house to be used as appurtenant to it, or into such outbuildings as are necessary to it as a dwelling.").

The Texas Court of Appeals issued the most persuasive interpretation of the meaning of a "structure appurtenant to."  When the Tennessee legislature overhauled the state criminal laws, it adopted significant provisions from "the Texas derivation of the Model Penal Code."  *State v. Ducker*, No. 01C01-9704-CC-00143, 1999 WL 160981, at *16 n.10 (Tenn. Crim. App. Mar. 25, 1999) (citing Derivation Comments, *Proposed Draft*, TENN. CODE ANN. § 39-403 (1973)).  In *Jones v. State*, 690 S.W.2d 318, 319 (Tex. Ct. App. 1985), the court considered whether Texas's burglary-of-a-habitation statute applied to burglary of an unattached garage.  The Texas Penal Code's definition of "habitation" is nearly identical to Tennessee's:

(1)  "Habitation" means a structure or vehicle that is adapted for the overnight accommodation of persons, and includes:
    (A)  each separately secured or occupied portion of the structure or vehicle; and
    (B)  each structure appurtenant to or connected with the structure or vehicle.

18

TEX. PENAL CODE ANN. § 30.01(1) (Vernon 1974).[6] The Texas Court of Appeals held that an "unattached garage . . . is a structure appurtenant to the residence," and therefore it qualifies as a "habitation" within the meaning of the statute. *Jones*, 690 S.W.2d at 319 (internal quotation marks omitted). The court concluded that an unattached garage is a structure appurtenant to a residence because it is "'necessarily connected with the use and enjoyment' of the house, and it is secondary or 'incident to' the principal building, the house." *Id.* (quoting Annot., 43 A.L.R.2d 831 (1955)).

Thus, because § 39-14-401(1) expands the definition of "habitation" to include unattached, uninhabited structures, we conclude that § 39-14-403 is not categorically a crime of violence within the meaning of § 2L1.2(b)(1)(A)(ii).

**E. The Precedent of Other Circuit Courts**

Although we are not bound by the law of other circuits, we may look to other circuits for guidance. *See, e.g.*, *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 278 (6th Cir. 2010). Other circuit courts have not analyzed whether § 39-14-403 qualifies as a "crime of violence" under U.S.S.G. § 2L1.2. Only the Fifth and Tenth Circuits have considered the scope of Texas's similar aggravated burglary statute and whether it qualifies as an enumerated "crime of violence." In *United States v. Ventura-Perez*, 666 F.3d 670 (10th Cir. 2012), the Tenth Circuit "assum[ed], without deciding that the Texas statutory offense includes more than burglary of a dwelling

---

[6]*Compare with* TENN. CODE ANN. § 39-14-401(1). The definition of "habitation" in the Texas Penal Code has not changed since the *Jones* decision. *See* TEX. PENAL CODE ANN. § 30.01 (West 2013).

under the guidelines," *id* at 674, and applied the modified-categorical approach to determine whether the defendant's conviction was a crime of violence under § 2L1.2. *Id.* at 676; *see also United States v. Porras-Rubi*, 468 F. App'x 892, 898 (10th Cir. 2012) (applying the modified-categorical approach without deciding whether Texas Penal Code Annotated § 30.01(1) was broader than the generic definition of a dwelling). The Fifth Circuit, on the other hand, concluded that the crime "burglary of a habitation" is equivalent to the enumerated offense "burglary of a dwelling," but the court did not thoroughly analyze the scope of § 30.01(1) and whether it applied to unattached, unoccupied structures. *See United States v. Garcia-Mendez*, 420 F.3d at 456-57 (holding that a burglary of a habitation was the same as a burglary of a dwelling within the meaning of U.S.S.G. § 2L1.2) (citing *United States v. Hornsby,* 88 F.3d 336, 339 (5th Cir.1996) (considering whether a burglary of a habitation is a crime of violence under U.S.S.G. § 4B1.2(1)(ii))). Because the Fifth Circuit did not rigorously analyze the scope of the appurtenant-to clause of the Texas statute, we treat *Garcia-Mendez* as having little to no persuasive value.

## F. A Realistic Probability of Prosecution

The government argues that the lack of Tennessee cases applying § 39-14-403 to burglaries of unattached, uninhabited structures is fatal to Lara's argument. Appellee Br. at 11. We disagree. When we consider whether a state statute is broader than the generic definition of an enumerated offense, there must be "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime."

*Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). To show this, the defendant "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.* But we do not need to abandon the plain meaning of the statute. *See United States v. McGrattan*, 504 F.3d 608, 614 (6th Cir. 2007) ("Under [the statutory] definition, 'nudity' clearly covers representations which include the breast or buttocks, but which do not focus on or even include the genitals or pubic area[—a non-generic definition of child pornography]."); *see also United States v. Aparicio-Soria*, 740 F.3d 152, 157–58 (4th Cir. 2014) (en banc) ("[T]he 'key' is 'elements, not facts,' . . . and violent force is simply not an element of resisting arrest in Maryland. And that ends the inquiry.") (quoting *Descamps*, 133 S. Ct. at 2283); *Mendieta-Robles v. Gonzales*, 226 F. App'x 564, 572 (6th Cir. 2007) ("[This argument] requires us to ignore the clear language of [the statute]."). Moreover, state-court cases that suggest that a statute applies to non-generic conduct provide sufficient evidence that criminal prosecution for non-generic crimes is a reasonable probability. *See McGrattan*, 504 F.3d at 614–15; *Aparicio-Soria*, 740 F.3d at 157–58 ("We do not need to hypothesize about whether there is a 'realistic probability' that Maryland prosecutors will charge defendants engaged in non-violent offensive physical contact with resisting arrest; we know that they can because the state's highest court has said so.").

The government is correct that there appear to be no cases in Tennessee that have applied § 39-14-403 to unattached, uninhabited structures. The meaning of the statute, however, is plain: the statute applies to structures that belong to the principal structure. We should not ignore the

plain meaning of the statute. Moreover, *Fletcher v. State* gives us pause because the Tennessee Supreme Court used the phrase "appurtenant to" to mean "belonging to" the mansion for the purpose of burglary. *See* 78 Tenn. at 339. That definition is still binding precedent on Tennessee courts even though the statute at issue is no longer in effect. TENN. CODE ANN. § 39-11-104. Finally, the Texas Court of Appeals's application of nearly identical statutory language to an unattached garage demonstrates that there is a realistic probability that a prosecutor could charge a person with burglary of a habitation for burglary of a tool shed or other unattached, uninhabited structure. *See Jones*, 690 S.W.2d at 318.

For the foregoing reasons, we hold that § 39-14-403 does not categorically qualify as a generic burglary of a dwelling within the meaning of the U.S.S.G. § 2L1.2(b)(1)(A)(ii) & cmt. n.1(B)(iii). Thus, Lara's conviction is not categorically a crime of violence.

## G.  The Modified-Categorical Approach

The government requests a remand in order to employ the modified-categorical approach to determine whether Lara actually pleaded guilty to a generic "burglary of a dwelling." Appellee Br. at 20. We may utilize the modified-categorical approach if the statute is divisible. *Descamps*, 133 S. Ct. at 2284 (citing *Nijhawan v. Holder*, 557 U.S. 29 (2009)); *see also United States v. Covington*, 738 F.3d 759, 764 (6th Cir. 2014). An indivisible statute is one that does not offer alternative crimes. *Descamps*, 133 S. Ct. at 2284. If the statute is indivisible, then the court's analysis ends, and the outcome turns on whether the statute in question is generic or overly inclusive. *Id.* If the statute is divisible, however, the modified-categorical approach

allows the court to examine certain documents "to determine which statutory phrase was the basis for the conviction." *Johnson v. United States*, 559 U.S. 133, 144 (2010) (Souter, J. concurring); *see also United States v. Shepard*, 544 U.S. 13, 26 (2005) (permitting review of "the terms of the charging document, the terms for a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or some comparable judicial record of this information.").

Aggravated burglary in Tennessee is a divisible statute. The state could charge a person with burglary of five types of structure: a "structure . . . designed or adapted for the overnight accommodation of persons," TENN. CODE ANN. §§ 39-14-401(1)(A), 403; a "self-propelled vehicle that is designed or adapted for the overnight accommodation of persons and is actually occupied at the time of initial entry by the defendant," *id.* §§ 39-14-401(1)(B), 403; a "separately secured or occupied portion of the structure or vehicle," *id.* §§ 39-14-401(1)(C), 403; a "structure appurtenant to . . . the structure or vehicle," *id.*; or a "structure . . . connected with the structure or vehicle." *Id.* Thus, it is possible to determine which structure the defendant burglarized, and § 39-14-403 is a divisible statute.

The government asserts that § 39-14-401(1)(A) and (B) obviously fit the generic definition of a dwelling. *See* Appellee Br. at 20. Neither party has briefed the issue of whether subsections (A) and (B) are non-generic. And we have never held that subsections (A) and (B) satisfy the generic definition of a dwelling. Accordingly, we save that question for another day.

There are only two documents in the record that offer insight into the circumstances of Lara's charge and plea: the state-court information and the state-court judgment. R. 22-1 (State Ct. Information) (Page ID #51); R. 22-2 (State Ct. J.) (Page ID #53). Neither document provides information about whether Lara pleaded guilty to a generic burglary of a dwelling. *See* R. 22-1 (State Ct. Information) (Page ID #51); R. 22-2 (State Ct. J.) (Page ID #53). The government argues that there may be other admissible documents, such as the plea colloquy, or any factual findings by the state judge, which might provide information about the specific nature of Lara's offense. Appellee Br. at 20–21. But the government did not introduce any of these documents at the sentencing hearing in the district court. *See* R. 25 (Sentencing Mem.) (Page ID #84–95); R. 31 (Tr. Sentencing Hr'g) (Page ID #120–52). The issue, then, is whether the government has forfeited the right to introduce additional *Shepard* documents to prove that the defendant committed a generic burglary of a dwelling.

Whether a party has forfeited a right or argument is "a mixed question of law and fact." *Karam v. Sagemark Consulting, Inc.*, 383 F.3d 421, 426 (6th Cir. 2004). We determine de novo whether the facts show that a party forfeited a right or argument. *See United States v. Boudreau*, 564 F. 3d 431, 435 (6th Cir. 2009). Forfeiture occurs when a party fails "to make the timely assertion of a right." *United States v. Olano*, 507 U.S. 725, 733 (1993); *United States v. Noble*, 762 F.3d 509, 528 (6th Cir. 2014).[7] Just as criminal defendants can forfeit rights or arguments,

---

[7]Waiver, on the other hand, is "'the intentional relinquishment or abandonment of a known right.'" *Olano*, 507 U.S. at 733 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

so too can the government.  *Boudreau*, 564 F.3d at 435 ("'[A]s with any other argument, the government can forfeit a waiver argument by failing to raise it in a timely fashion.'" (quoting *Hunter v. United States*, 160 F.3d 1109, 1113 (6th Cir. 1998))); *see also United States v. Ford*, 184 F.3d 566, 578 n.3 (6th Cir. 1999) ("Even appellees waive arguments by failing to brief them."); Fed. R. App. P. 28(b).

The government failed to offer additional *Shepard* documents at the sentencing hearing in the district court even though it knew that Lara contested the sixteen-level enhancement.  *See* R. 22 at 1–15 (Def.'s Sentencing Position) (Page ID #5–49); R. 25 at 1–12 (Gov't Sentencing Mem.) (Page ID #84–95); R. 31 at 7–15 (Tr. Sentencing Hr'g) (Page ID #126–34).  Moreover, Lara provided two *Shepard* documents in support of his objections to the PSR, which the government never supplemented or contested even though it knew that Lara's argument rested on the interpretation and application of § 39-14-401(1)(C).  *See* R. 22-1 at 2 (Information) (Page ID #51); R. 22-2 at 2 (State Ct. J.) (Page ID #53); R. 25 at 1–12 (Gov't Sentencing Mem.) (Page ID #84–95); R. 31 at 7–15 (Tr. Sentencing Hr'g) (Page ID #126–34).  The government's failure to include any *Shepard* materials is baffling.  It is, after all, the government's burden to prove that sentencing enhancements should apply.  *United States v. Prater*, 766 F.3d 501, 512–13 (6th Cir. 2014); *see also United States v. Anglin*, 601 F.3d 523, 530 (6th Cir. 2010) ("The government bears the burden of proving that [the defendant's] . . . conviction was a crime of violence under U.S.S.G. § 4B1.1(a)."); *United States v. Bonilla*, 524 F.3d 647, 655 (5th Cir. 2008) (same for

---

"[W]aiver extinguishes the ability to challenge any error under Rule 52."  *Noble*, 762 F.3d at 528.

§ 2L1.1). The government had an opportunity to introduce *Shepard* documents to satisfy its burden of proving that Lara's conviction was a crime of violence, but did not do so.

Moreover, the government has not developed its argument in favor of a remand to apply the modified-categorical approach, failing to offer case citations or argument in its favor. *See* Appellee Br. at 5, 20–21. "'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n,* 59 F.3d 284, 293–94 (1st Cir. 1995)). Thus, we hold that the government has lost the right to offer *Shepard* documents on remand.

### III. CONCLUSION

For foregoing reasons, we **REVERSE** the district court's holding that Tennessee Code Annotated § 39-14-403 is categorically a crime of violence. We **REMAND** for a limited resentencing without the crime-of-violence enhancement under § 2L1.2(b)(1)(A)(ii). On remand, the government may not offer additional *Shepard* documents. The district court may apply the eight-level enhancement under § 2L1.2(b)(1)(C), which Lara has conceded.

DAMON J. KEITH, Circuit Judge, concurs in the judgment only.